**In re Deborah McClain HICE, Debtor.**

**C/A No. 07–01021–HB.**

United States Bankruptcy Court, D. South Carolina.

Sept. 14, 2007.

Randy A. Skinner, Skinner and Associates Law Firm, LLC, Greenville, SC, for Debtor.

John K. Fort, Drayton, SC, Trustee.

Mary G. Slocum, Office of the United States Trustee, Columbia, SC, U.S. Trustee.

## ORDER

HELEN E. BURRIS, Bankruptcy Judge.

THIS MATTER came before the court for hearing on the Motion of the United States Trustee to Dismiss for Presumed Abuse pursuant to 11 U.S.C. § 707(b)(1) and (2).[1] The issue before the court is whether the debtor can claim the Local Standard vehicle ownership expense of $471 pursuant to § 707(b)—the Means Test.

■■■■ The Means Test is found in amendments to the Code made pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). It is a mathematical formula to determine a debtor's hypothetical excess income and therefore his or her ability to repay all or a portion of debt. § 707(b)(2)(A)(i) provides that "the court shall presume abuse exists" in a chapter 7 proceeding if a debtor's current monthly income minus allowed expenses, when considered over a 60–month period, exceeds a designated amount. If the debtor does not pass the Means Test and the presumption of abuse arises because the debtor has more than the threshold amount of income available, dismissal pursuant to § 707(b)(1) is likely.[2] If the debtor "passes" the Means Test—has less income available after expenses than the amount set forth in the statute—then facts must exist to prove that the granting of relief would actually be abusive without the benefit of the presumption.

The purpose for the amendment to section 707(b) was to limit the chapter 7 bankruptcy remedy for consumer debtors to those debtors who are honest and who need the remedy to preserve a decent standard of living for themselves and their dependents. *See* S.Rep. No. 65, 98th Cong., 1st Sess. 53, 54 (1983) By this enactment, persons who have primarily consumer debts and who have financial resources in excess of their basic needs would be forced to seek relief under a reorganization chapter or to otherwise attempt to repay their creditors.

*In re Goddard*, 323 B.R. 231, 233–34 (Bankr.S.D.Ohio 2005).

The U.S. Trustee asserts that the debtor in this case has claimed more than her share of expenses under the Means Test, specifically expenses involving the debtor's transportation needs. This above median income debtor filed for Chapter 7 relief on February 28, 2007. The debtor's schedules indicate that she owns a 2001 Mitsubishi Mirage with approximately 50,000 miles used primarily for transportation to work. She purchased the car in 2002. The vehicle runs but according to the debtor is in poor condition otherwise. Her schedules value the vehicle at $3465 and indicate that it is not encumbered by any lien, so she does not make any debt payment for that vehicle. From the testimony it appears that the debtor will need this or a similar vehicle to meet her basic transportation needs now and in the future

■■■■ To determine a debtor's expenses under the Means Test, the law does not always consider a debtor's actual, current income and expenses. Instead it includes only certain income sources and allows the debtor to reduce available income by certain expenses necessary for a basic standard of living. In addition to certain com-

---

1. Future references to the Bankruptcy Code will be made by section number only.

2. See presumption rebuttal provisions of § 707(b)(2)(B)(i).

mon, standard expenses the debtor is also allowed to count some expenses specific to the debtor based on his or her subjective circumstances.

The standard expenses—which involve such things as food, clothing, shelter and transportation—are found in § 707(b):

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for the relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependant.... Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.

§ 707(b)(2)(A)(ii)(I). The IRS issues the standard vehicle ownership expense, a "Local Standard" mentioned above,[3] in a chart available to the public. It looks like this on the IRS website:

|  | First Car | Second Car |
|---|---|---|
| **National** | $471 | $332 |

Allowable Living Expenses for Transportation, http://www.irs.gov/businesses/small/article/0,,id=104623,00.html (last visited Sept. 12, 2007).[4]

Although pursuant to the plain language of the statute above—"payments for debts" are expressly *excluded from* § 707(b)(2)(A)(ii)(I) expenses which include the Local Standards transportation expenses—some debt payments are thereafter specifically *included* in the debtor's *non-standard, actual expenses* under the Means Test according to § 707(b)(2)(A)(iii). That section allows a debtor to include "the debtor's average monthly payments on account of secured debts" and provides that they "shall be calculated as the sum of ... the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition ...." § 707(b)(2)(A)(iii)(I). Therefore, if a debtor has a car or lease payment, the actual averaged amount thereof may be allowed under subsection (iii).[5] Based on the plain language of the statute, courts should not consider any "payments for debts" when interpreting section (ii) expenses because the statute clearly says that this is not correct. Payments for debts are expressly excluded therefrom and are instead considered under section (iii).

Despite the apparent simplicity, courts differ on how the IRS standard expense figures of section (ii) are to be applied under the Means Test, with all arguments turning on whether the court

---

**3.** National Standard expenses include food, housekeeping supplies, apparel and services, personal care products and services, and miscellaneous. Additional Local Standards expenses include housing and utilities, public transportation (if applicable) and vehicle operating costs.

**4.** The Standard expenses have been altered yet again effective October 1, 2007. *See* Allowable Living Expense Redesign Changes to the 2007 ALE Standards, http://www.irs.gov/

businesses/small/article/0,,id=173524,00.html (last visited Sept. 12, 2007).

**5.** Courts have found that the debtor may claim the higher of the standard or actual amount when applying sections (ii) and (iii) together. *In re Megginson*, No. 06–12034, 2007 WL 2609783, at *7 (Bankr.D.Md. Sept.4, 2007); *In re Prince*, No. 06–10328, 2006 WL 3501281, at *3 (Bankr.M.D.N.C. Nov. 30, 2006); *In re Fowler*, 349 B.R. at 414, 417 (Bankr.D.Del.2006).

must consider a debtor's actual "payment for debts." Many courts have found that if a debtor does not have an actual car lease or debt payment, then there is no "expense" that is "applicable" under the Local Standards.[6] Many courts disallowing the expense look behind the IRS National and Local Standards' numbers specified in the chart to the IRS's rulings and policies on use of such expenses in its collection proceedings.

Examination of the tax law begins with Title 26 of the U.S.Code. Thereafter, one must examine various regulations, rulings and manuals to determine the current IRS interpretation regarding a tax issue.[7] Many bankruptcy courts quote one short passage from the Internal Revenue Manual (IRM): "[i]f a taxpayer has no car payment only the operating costs portion of the transportation standard is used to figure the allowable transportation expense."[8] *See, e.g., In re Barraza,* 346 B.R. at 728. This particular section of the IRM further references a publication titled *Job Aids for IRM 5, Chapter 19, for Financial Analysis—Local Standards: Transportation,* for further guidance on the interpretation of the transportation expense in collection proceedings before the IRS. In fact, the IRM contains pages and pages regarding the interpretation of the

National and Local Standards Expenses and Other Necessary Expenses in IRS proceedings, and references additional volumes of the Job Aids for the IRM. Within those documents there is a holistic system for establishing a taxpayer's ability to repay tax debt. Some bankruptcy courts have reasoned that

> in order to determine whether the expense Standards issued by the IRS are "applicable," the most logical resource to consult is the IRS. *See, e.g., In re Slusher,* 359 B.R. 290, 309 (Bankr.D.Nev.2007) ("Congress' decision to use the IRS standards within the Bankruptcy Code strongly suggest that courts should look to how the IRS determined those standards; that is, as to how the IRS would have applied them in similar circumstances.") (footnote omitted).

*Fokkena v. Hartwick,* No. 06–4433, 2007 WL 2350560, at *5 (D.Minn. Aug.20, 2007). However, a closer examination of the overall IRS collection scheme indicates that its procedures do not produce results substantially similar to the Means Test. A reading of more than the one simple section cited above indicates that the IRS's standards for determining who can and cannot pay taxes are different from the standards found in the Means Test applicable to bankruptcy proceedings.[9] One test exam-

---

**6.** *See In re Ross–Tousey,* 368 B.R. 762 (E.D.Wis.2007); *In re Pampas,* 369 B.R. 290 (Bankr.M.D.La.2007); *In re Harris,* 353 B.R. 304 (Bankr.E.D.Okla.2006); *In re Oliver,* 350 B.R. 294 (Bankr.W.D.Tex.2006); *In re Barraza,* 346 B.R. 724 (Bankr.N.D.Tex.2006). Many of these courts also acknowledge that any car payment or lease expense will serve to make the standard expense applicable, regardless of minimal amount or short term. Therefore a debtor with one more payment left on a car loan is allowed to claim the standard expense but a debtor who has just made his last payment before filing is not.

**7.** Tax Codes, Regulation and Official Guidance, http://www.irs.gov/taxpros/article/0,, id=98137,00.html (last visited Sept. 12, 2007)

**8.** IRM 5.15.1.7(4)(B) (May 1, 2004). The operating costs include an expense for public transportation, if the taxpayer does not own a car.

**9.** *See, e.g.,* IRM 5.19.1.4.3.2 (standard expense amount is a cap) and IRM 5.19.1.4.3.4 (for standard to be applicable taxpayer must have an actual payment on a debt) versus § 707(b)(2)(A)(iii) (standard expense is not a cap) and § 707(b)(2)(A)(ii) (do not include payments on debts in standard expense). *See*

ines the debtor's ability to repay unsecured debt that would otherwise be discharged in a chapter 7 proceeding, after deducting secured and priority debts (including IRS tax debt). Another analyzes a taxpayer's ability to repay tax debt owed to the IRS, often regardless of secured and other priority obligations.[10] Therefore there are no "similar circumstances" to compare.

If Congress had wished to incorporate all of the IRS analyses, processes, manuals and procedures into bankruptcy law to determine a debtor's ability to pay and thus his or her disposable income, it clearly could have adopted these set standards and saved the courts the time and effort. Rather, Congress put together a new statutory scheme in the Means Test that intentionally departs from various IRS procedures for determining what a debtor in bankruptcy—not a taxpayer in an IRS matter—can afford to pay. The language of the bankruptcy statute only references the "expense amounts specified under the National and Local Standards," not the whole of the IRS's procedures and manuals for training and guiding its employees.

■■ To determine what *is* meant by the language of the statute:

the starting point in discerning congressional intent is the existing statutory text ... and not the predecessor statutes. It is well established that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the test is not absurd—is to enforce it according to its terms."

*Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (quoting *Hartford Underwriters Ins., Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)) (other citations omitted). Enforcing the plain meaning of the statute, one must only adopt the applicable figure specified on the IRS-issued chart as a standard allowance for the debtor's transportation needs, whether actual or hypothetical, for the purpose of determining this debtor's realistic ability to pay debt over a five year period. The fact that the specified number is based on the "five-year average of new and used car financing" does not mandate that a debtor in bankruptcy must have an actual, current ownership/lease ex-

*also* IRM 5.19.1.4.3.5 IRS Other Expenses (expenses that may be determined necessary include unsecured debt service if necessary and taxpayer can substantiate that payments are being made. Examples given are debts which may be necessary to the production of income, such as payment to suppliers and payments on lines of credit needed for business, debts incurred to pay federal tax liability, and payment of federally insured student loans)—no such expenses are found in the Means Test and § 707(b)(2)(A)(ii)(I) which adopts only certain IRS "Other Expenses" specifically provides that no debt service shall be included pursuant to that section. *See* IRM 5.19.1.4.3.5 (disallow any charitable expense not a condition of employment, such as for a minister) compared to § 707(b)(1) (although charitable expenses are categorized as IRS "Other Expenses" which are generally incorporated into the means test in bankrupt-

cy by § 707(b)(2)(A)(ii)(I), the bankruptcy court may not take into consideration a charitable contribution under § 548(d)(3) when determining if the debtor passes the Means Test and, therefore, such contributions are allowed in bankruptcy proceedings). There are other examples indicating that Congress was selective in incorporating only specific pieces and parts of the IRS Standards.

10. *See, e.g.*, IRM 5.19.1.4.3.4 (Dec. 15, 2002) entitled "Transportation Expenses" which caps secured car payments at a standard amount and IRM 5.19.1.4.3.5 (Dec. 22, 2005) which discusses application of other expenses such as debt repayment: "If the taxpayer cannot pay within 5 years, it may be appropriate to allow the taxpayer the excessive necessary and conditional expenses for up to one year in order to modify or eliminate the expense." IRM 5.19.1.4.3.5(3).

pense for the purposes of the Means Test.[11] Many standard expenses may not be "actual" expenses nor the "actual" amounts expended by a specific debtor each month. Rather, they are standard allowances to maintain a basic standard of living. One debtor may spend more on housing and less on transportation, one less on food and more on utilities.

When discussing the Local Standards, the language of section § 707(b)(2)(A)(ii)(I) *does not* use the words and phrases designed to limit and qualify that standard expense that are liberally applied to other expenses in that section. For example, the statute uses the following modifiers elsewhere: *"the debtor's actual monthly expenses"* § 707(b)(2)(A)(ii)(I) (modifies "Other Necessary Expenses issued by the Internal Revenue Service"); *"debtor's reasonably necessary expenses incurred"* § 707(b)(2)(A)(ii)(I) (Family Violence Prevention and Services Act expenses); *"the continuation of actual expenses paid by the debtor that are reasonable and necessary ..."* § 707(b)(2)(A)(ii)(II) (expenses for elderly, chronically ill or disabled, immediate family member); *"if it is demonstrated that it [the expense] is reasonable and necessary"* § 707(b)(2)(A)(ii)(I) (additional allowances for food and clothing up to 5%); the expense must be *"contractually due"* § 707(b)(2)(A)(iii)(I) (payments on secured debts); expense allowed only *"if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary"* § 707(b)(2)(A)(ii)(V) (additional home energy costs). These words and phrases *are* used in the same paragraph where the Local Standards expenses are found, to define and limit other enumerated expenses under the Means Test, not the expense in question here. Since it is clear from these words that Congress knew how to include language of this sort to require more of a debtor before an expense allowance is applicable, omitting such language with regard to the Local Standards expenses is enlightening. The words of the statute regarding the Local Standards expenses merely require that one apply the standard amounts "specified under" the IRS Local Standards. These words are not the same as if the statute had designated only expenses "allowed by" the IRS or required "actual expenses."

Adding this analysis to the language of the statute prohibiting the inclusion of "payments on debts" in the local expenses, and to the fact that secured debt service on vehicles is covered specifically elsewhere under § 707(b)(2)(A)(iii), it appears clear that the vehicle ownership expense is not contingent upon a debtor's actual debt payments per the statutory language.

If Congress intended to give an individual debtor a reduction under National Standards or Local Standards only for that particular debtor's "actual" expense within a given category, Congress could have easily said so, just as it did later in the same statutory provision that allows a reduction for a debtor's "actual monthly expense" in the categories that the IRS specifies as Other Necessary Expenses. It didn't. Section 707(b)(2)(A)(ii)(I) also includes the sen-

---

**11.** "The transportation standards [issued by the IRS] consist of nationwide figures for monthly loan or lease payments referred to as ownership costs, and additional amounts for monthly operating costs broken down by Census Region and Metropolitan Statistical Area (MSA)." Collection Financial Standards, www.irs.gov/individuals/article/0,,id=96543, 00.html (last visited September 13, 2007). These standard expenses were revised on February 1, 2006, to, among other things: "base automobile ownership/leasing costs on the five-year average of new and used car financing data compiled by the Federal Reserve Board of Governors." *Id.*

tence that "[n]otwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts." Although actual payments for debts may permit means test reductions under other subsections of § 707(b)(2)(A), this sentence makes clear that a debtor's actual expenses are irrelevant in determining the reductions for National and Local Standards under § 707(b)(2)(A)(ii)(I). [The debtor] has the better of the statutory construction arguments in this Court's view.

*In re Zaporski*, 366 B.R. 758, 766 (Bankr. E.D.Mich.2007).

■ The debtor in this case on these facts may claim a vehicle ownership expense for her basic transportation needs pursuant to § 707(b)(2)(A)(ii)(I).[12] That expense is only allowed to determine whether the debtor is charged with a presumption of abuse under § 707(b)(2). The Court makes this decision in favor of the debtor with the understanding that § 707(b)(2)(B) sets the standard for rebutting the presumption of abuse rather high. If application of that standard expense to a debtor's case leads to an unjust result, that is, Schedules I and J indicate that a debtor has the actual ability to repay a relevant portion of debt because he or she has no actual vehicle ownership expense, then parties in interest may avail themselves of the remedies set forth in § 707(b)(1) without the benefit of the presumption of § 707(b)(2).[13] As noted in *In re Edmunds*,

Schedules I and J and a debtor's actual income and expenses remain relevant to bankruptcy proceedings. 350 B.R. 636, 645 (Bankr.D.S.C.2006).

IT IS THEREFORE, ORDERED:

1. That there is no presumption of abuse in this Chapter 7 case, and the motion of the U.S. trustee is hereby DENIED to the extent that it relies upon the 11 U.S.C. § 707(b)(2) presumption of abuse;

2. That the U.S. Trustee may request an additional hearing on its Motion pursuant to 11 U.S.C. § 707(b)(1) if, after review of this order, prior testimony and the Debtor's Schedules I and J, a written request for additional hearing is made within ten (10) days from entry of this order. Absent such a request, this order shall conclude this matter in favor of the Debtor.

---

**12.** *See In re Megginson*, 2007 WL 2609783, at *7; *In re Wilson*, No. 06–72193, 2007 WL 2199021, at *6 (Bankr.W.D.Ark. July 30, 2007); *In re Vesper*, No. 06–00565, 2007 WL 1864117, at *6 (Bankr.D.Alaska June 28, 2007); *In re Ragle*, No. 06–30208, 2007 WL 1119632, at *5 (Bankr.E.D.Ky. Mar.23, 2007); *In re Zaporski*, 366 B.R. at 766; *In re Billie*, 367 B.R. 586, 591 (Bankr.N.D.Ohio 2007); *In re Fowler*, 349 B.R. at 421; *In re Prince*, 2006 WL 3501281, at *3.

**13.** In this case the Court notes that the debtor claimed an expense of "car fund for replacement vehicle—$215" on her Schedule J which, if removed, may lead to excess income pursuant to Schedules I and J. The Court makes no ruling at this time on whether such an entry is appropriate on Schedule J actual expenses.