ELECTRONIC CITATION:  2008 FED App. 0009P (6th Cir.)
File Name:  08b0009p.06

# BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re:  RALPH HARTFORD KIMBRO, JR. AND PATRICIA ANN KIMBRO, | ) ) ) | |
| Debtors. | ) ) ) | |
| ———————————————— | ) ) | |
| HENRY E. HILDEBRAND, III, TRUSTEE, | ) ) | |
| Appellant, | ) ) ) | |
| v. | ) ) | No. 07-8052 |
| RALPH HARTFORD KIMBRO, JR. AND PATRICIA ANN KIMBRO, | ) ) ) | |
| Debtors-Appellees. | ) ) ) | |
| ———————————————— | ) | |

Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee at Nashville.
No. 07-03948.

Argued:  February 6, 2008

Decided and Filed:  June 12, 2008

Before: FULTON, RHODES, and SCOTT, Bankruptcy Appellate Panel Judges.

————————————

## COUNSEL

**ARGUED:**  Henry E. Hildebrand, III, OFFICE OF THE CHAPTER 13 TRUSTEE, Nashville, Tennessee, for Appellant. Mary Elizabeth Ausbrooks, CLARK & WASHINGTON, P.C., Nashville, Tennessee, for Appellees. **ON BRIEF:**  Henry E. Hildebrand, III, OFFICE OF THE CHAPTER 13 TRUSTEE, Nashville, Tennessee, for Appellant.  Mary Elizabeth Ausbrooks, CLARK & WASHINGTON, P.C., Nashville, Tennessee, for Appellees.

---

**OPINION**

---

STEVEN RHODES, Bankruptcy Appellate Panel Judge. This appeal requires the Panel to decide whether in the means test of 11 U.S.C. § 707(b)(2)(A)(ii)(I), a debtor may deduct an "ownership expense" for a vehicle that is subject to neither secured debt nor a lease. For the reasons stated herein, the Panel concludes that the debtor is entitled to that expense deduction and affirms the decision of the bankruptcy court.

## I. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Middle District of Tennessee has authorized appeals to the BAP. A final order of a bankruptcy court may be appealed by right under 28 U.S.C. §158(a)(1). For purposes of appeal, an order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted).

The only issue on appeal is whether a debtor may claim the "vehicle ownership expense" on the means test form for a vehicle that is not encumbered by debt or subject to a lease. This is a legal issue which is reviewed de novo. *See Nicholson v. Isaacman (In re Isaacman)*, 26 F.3d 629, 631 (6th Cir. 1994). "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination." *First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998) (citation omitted).

## II. FACTS

The facts of this case are not in dispute. The Kimbros filed a voluntary chapter 13 bankruptcy petition on June 7, 2007. Their yearly income exceeded the state median income for a family of their size. The trustee objected to the Kimbros' chapter 13 plan, asserting that it did not comply with 11 U.S.C. § 1325(b).

Section 1325(b) provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan– . . . the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B).

For purposes of § 1325(b), the term "disposable income" means the current monthly income received by the debtor less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and for charitable contributions. 11 U.S.C. § 1325(b)(2)(A)(I) and (ii). Subparagraph (3) provides: "Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income" greater than the median income. 11 U.S.C. § 1325(b)(3).

The Kimbros' means test form, Form 22C, disclosed monthly disposable income of $183.60. Using the means test form to calculate this amount of "disposable income," the Kimbros deducted an ownership expense of $358.82 for their first vehicle. This figure was calculated by subtracting their car payment of $112.18 from the Local Standard of $471.18, as required by 11 U.S.C. § 707(b)(2)(A)(ii)(I). The Kimbros also deducted an ownership expense $332 for the Kimbros' second vehicle. The Kimbros reported no payment on any debt secured by the second vehicle.

The trustee argues that the Kimbros' plan did not propose to pay all "projected disposable income" to unsecured creditors because on Form 22C, the Kimbros deducted a vehicle ownership expense for a second vehicle for which they were not indebted and did not make any payments. In support of this argument, the trustee relies on the Internal Revenue Manual, Financial Analysis Handbook ("IRM"), which he contends does not allow taxpayers to claim an ownership expense for a vehicle for which they do not make payments.[1] Accordingly, the trustee asserts that the monthly disposable income reflected on the Kimbros' means test form does not accurately reflect their

---

[1] The complete IRM may be found at http://www.irs.gov/irm. The Financial Analysis Handbook that addresses the IRS' application of its collection standards is in Part 5, Chapter 15 of the IRM and may be found at http://www.irs.gov/irm/part5/ch15s01.html.

disposable income. The trustee asserts that the Kimbros are not entitled to deduct the expense and that the bankruptcy court erred in confirming the plan.

## III.   DISCUSSION

The issue of whether a debtor may deduct a vehicle ownership expense in the bankruptcy means test when the debtor has no debt or lease payment has arisen with some frequency since the enactment of the 2005 amendments to the bankruptcy code. At least twenty eight published decisions have addressed the issue and there is a close split of authority on the question.[2]

The issue arises based on the language in 11 U.S.C. § 707(b)(2)(A)(ii)(I), the means test, which states, "The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides[.]" The reference to National and Local Standards is to the standards used by Internal Revenue Service for revenue officers to determine a taxpayer's ability to pay a delinquent tax. These standards are compiled in a table format and are published on the internet. The U.S. Trustee's website and most bankruptcy courts' websites provide links to these standards.

The Local Transportation Standards vary by census region. There are two components, one for operating expenses and one for ownership expenses. The table for "Operating Costs and Public Transportation Costs" sets forth various amounts depending on whether the debtor owns no car, one car or two cars. The table for "Ownership Costs" provides amounts for the debtor's "first car" and "second car."

The IRS Local Transportation Standards do not state or suggest that a taxpayer must have a debt or lease payment for the revenue officer to deduct the applicable ownership expense. However, the trustee argues that because under the IRM, the IRS does not deduct a vehicle ownership expense when there is no debt or lease payment for the vehicle, 11 U.S.C. § 707(b)(2)(A)(ii)(I) incorporates the same rule into the bankruptcy means test.

_____

[2] The cases are collected in *In re Clark*, No. 07-23390, __ B.R. __, 2008 WL 444565 (Bankr. E.D. Wis. Feb. 14, 2008) and in *Grossman v. Sawdy*, 384 B.R. 199 (E.D. Wis. 2008).

The bankruptcy court rejected the trustee's position and held that the Kimbros are allowed to deduct the ownership expense amounts in the applicable Local Transportation Standards. The Panel affirms for the following reasons:

1. The plain language of 11 U.S.C. § 707(b)(2)(A)(ii)(I) states that a debtor's means test deductions "shall be" the amounts specified in the local standards and there is nothing explicit in that statutory language that requires a debtor to have a debt or lease payment to deduct a vehicle ownership expense in the bankruptcy means test.

2. Section 707(b)(2)(A)(ii)(I) does not incorporate the IRM into the bankruptcy means test.

3. The legislative history demonstrates that Congress intended to incorporate only the specific IRS expense standards and not the IRM.

4. There is nothing explicit in the IRS Local Transportation Standard that requires a debtor to have a debt or lease payment to deduct a vehicle ownership expense in the bankruptcy means test.

5. The substantial discretion allowed to a revenue officer under the IRM is inconsistent with the purpose of the means test, which is to utilize a uniform, bright-line test that eliminates judicial discretion.

6. The premise of the trustee's argument– that the IRM does not allow a vehicle ownership expense when there is no debtor or lease payment– is mistaken; the IRM gives a revenue office substantial discretion to consider and allow any expenses above the standards.

7. Contrary to the suggestion in some cases, every debtor who owns a vehicle incurs expenses arising from the ownership of the vehicle regardless of whether the debtor incurs a debt or lease payment associated with the vehicle.

These reasons are discussed more fully below.


A. The plain language of 11 U.S.C. § 707(b)(2)(A)(ii)(I) states that a debtor's means test deductions "shall be" the amounts specified in the local standards and there is nothing explicit in that statutory language that requires a debtor to have a debt or lease payment to deduct a vehicle ownership expense in the bankruptcy means test.

"The starting point in discerning congressional intent is the existing statutory text, and not the predecessor statutes. It is well established that when the statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce

it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023 (2004) (citations omitted).

Section 707(b)(2)(A)(ii)(I) provides in part:

> The debtor's monthly expenses shall be the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards, and the debtor's *actual* monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides.

(emphasis added).

The plain statutory language of § 707(b)(2)(A)(ii)(I) mandates that the debtor's expenses "shall be" those specified in the National and Local Standards. This provision makes very simple the task of applying the Local and National Standards– just look them up in the tables of the Standards and enter them into the means test form.

The statute makes two other clear points. First, the debtor's monthly expenses also "shall be" the debtor's actual expenses for the categories identified as Other Necessary Expenses. This establishes that Congress knew how to mandate the deduction of actual expenses. Second, Congress explicitly excluded the National and Local Standards from the set of deductions that are based only on actual expenses.

In this regard it is also important to note that § 707(b)(2)(A)(ii)(I) does not specifically address vehicle ownership expenses at all; nor does it specifically state that to deduct a vehicle ownership expense, a debtor must be making either payment on a debt secured by the vehicle or a lease payment on the vehicle. To the contrary, the statute further explicitly states, "Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts." This provision alone establishes beyond doubt that Congress intended to allow an ownership expense even when a debtor has no debt payment on a vehicle.[3] If Congress had not so intended, there would be no reason for this limitation.

The trustee argues that the debtor's ownership expense is not "applicable" if the debtor has no debt or lease payment, and several cases agree. *See e.g., Fokkena v. Hartwick*, 373 B.R. 645 (D. Minn. 2997); *Babin v. Wilson* (*In re Wilson*), 383 B.R. 729 (B.A.P. 8th Cir. 2008); *Ransom v. MBNA*

---

[3] Most likely, this limitation was included because under 11 U.S.C. § 707(b)(2)(A)(iii), a deduction is allowed for average monthly payments on secured debts and leases.

*Am. Bank, N.A.* (*In re Ransom*), 380 B.R. 799 (B.A.P. 9th Cir. 2007). This argument must be rejected for a number of reasons.

First, rules of statutory construction require that meaning must be given to a statute's every word. *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S. Ct. 2326 (1979). Therefore, as succinctly explained in *In re Demonica*, 345 B.R. 895 (Bankr. N.D. Ill. 2006) "applicable" expenses is a different concept than "actual" expenses:

> In order to give effect to every word in the statute, the term "actual monthly expenses" cannot be interpreted to mean the same as "applicable monthly expenses." The term "actual monthly expenses" refers to the "categories specified as Other Necessary Expenses issued by the Internal Revenue Service." Therefore, the Debtor's actual monthly expenses are relevant only for those categories specified as Other Necessary Expenses. Conversely, the term "applicable monthly expenses" under the National and Local Standards means something other than a debtor's "actual monthly expenses."

*Id.* at 902.[4]

Second, in the statutory language, the term "applicable" modifies the phrase "monthly expense amounts specified under the National Standards and Local Standards." 11 U.S.C. § 707(b)(2)(A)(ii)(I). It does not modify the statutory phrase "debtor's monthly expenses." This difference strongly suggests that a debtor should refer to the Standards and deduct the "applicable" amount. *In re Chamberlain*, 369 B.R. 519, 524 (Bankr. D. Ariz. 2007).

---

[4]*In re Demonica* also notes that this position has been adopted in the means test forms and in the comments to the forms, approved by the Judicial Conference of the United States:

> Again, the committee notes to the official forms provide some guidance. "Each of the amounts specified by the IRS in the Local Standards are treated by the IRS as a cap on actual expenses, but because § 707(b)(2)(A)(ii)(I) provides for deduction in the 'amounts specified under the . . . Local Standards,' the forms treat these amounts as allowed deductions." (Form B22 committee note para. C1) (alteration in original).

*Id.* at 902. It must also be noted that Form 22C itself requires the debtor to subtract the amount of actual payment from the expense deduction, but not to enter an amount less than zero. As noted in the text, if Congress intended the standards to be a cap based on the actual debt or lease payment, this calculation would not be necessary.

Accordingly, the Panel concludes that the plain meaning of 11 U.S.C. § 707(b)(2)(A)(ii)(I) allows the debtor to deduct the applicable ownership expense in the IRS Local Transportation Standard even if the debtor has no debt or lease expense.

B. Section 707(b)(2)(A)(ii)(I) does not incorporate the IRM into the bankruptcy means test.

The trustee argues that because Congress incorporated the IRS National and Local Standards into the bankruptcy means test, Congress must also have intended those standards to be applied in the bankruptcy means test in the same manner as the IRM applies them in the revenue collection process. The trustee argues that the IRM allows a taxpayers to deduct only the actual vehicle ownership expenses.[5]

There are three problems with the trustee's argument. First, as demonstrated in part F of this opinion below, the trustee has greatly oversimplified the position of the IRM on this point; in fact, the IRM permits a revenue officer substantial discretion in allowing a taxpayer's expenses.[6]

---

[5] Section 5.15.1.7 of the IRM, Financial Analysis Handbook, provides in pertinent part:

> Local Standards: These establish standards for two necessary expenses: housing and transportation. *Taxpayers will be allowed the local standard or the amount actually paid, whichever is less.*
> * * *
>> B. Transportation– . . . If a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense. *If a taxpayer has no car payment only the operating cost portion of the transportation standard is used to figure the allowable transportation expense.* Under ownership costs, separate caps are provided for the first car and second car. . . (emphasis added)

In addition, the note to section 5.15.1.9 of the IRM, Financial Analysis Handbook states:

> If the taxpayer has no car payment, or no car, question how the taxpayer travels to and from work, grocer, medical care, etc. *The taxpayer is only allowed the operating cost or the cost of transportation.* (emphasis added.)

[6] Curiously, in the trustee's view, if the debtor has even one dollar in debt or lease payments, the debtor is entitled to the full deduction under the applicable vehicle ownership expense standard. This is, however, without basis in the IRM.

The second difficulty with the trustee's argument is that as demonstrated above, § 707(b)(2)(A)(ii)(I) does not incorporate the IRM or the Financial Analysis Handbook, or even refer to them. That by itself is ample grounds to reject the trustee's argument. But there is more. Congress could have explicitly incorporated the IRM or the Financial Analysis Handbook into § 707(b)(2)(A)(ii)(I). Or, Congress could have drafted § 707(b)(2)(A)(ii)(I) to limit deductible expenses to actual expenses. It chose to do neither. Instead, as noted above, Congress chose to do the exact opposite by excluding any debt payments from the debtor's allowable ownership expense deduction.

Congress "says in a statute what it means and means in a statute what it says there[.]" *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254, 112 S. Ct. 1146, 1149 (1992). As observed in *Chamberlain*, 369 B.R. at 523:

> To the contrary, the language of § 707(b)(2)(A)(ii)(I) that the "monthly expenses shall be . . . the amounts specified" in the Standards states precisely the contrary-that the specified amounts are to be used, rather than that they are limits on a number derived from some other source. Not only would it take at least one more key word for this language to refer to a maximum limit rather than a specified amount, but it would require an additional concept or definition-the amount or number to which that limit should be applied. For the statute to identify one number subject to the maximum limit of another number, it would at least have to instruct the reader how to identify two numbers– the starting number and the limit. This statute only references one number, that derived from the Local Standards. The phrase "the debtor's applicable monthly expense amounts specified under the . . . Local Standards" references only one number, not two. This structure alone indicates it functions to specify the number to be used, rather than a limit to some other unidentified number.
>
> There being no ambiguity or absurdity in reading the statute to define the number to be used– the number "specified" in the Local Standards– there does not seem to be any reason to pursue the analysis further.

*Id. See also In re Fowler*, 349 B.R. 414, 419 (Bankr. D. Del. 2006).

C.  <u>The legislative history demonstrates that Congress intended to incorporate only the specific IRS expense standards and not the IRM.</u>

The legislative history of a prior bill that was not enacted can be useful to interpret language in a bill that was ultimately enacted.  *See e.g., Dawson Chemical Co. Rohm & Haas Co.*, 448 U.S 176, 204, 100 S. Ct. 2601, 2617 (1980); *United States v. Enmons,* 410 U.S 396, 404, 93 S. Ct. 1007, 1012 (1973);  *Transcontinental & Western Air, Inc. v. Civil Aeronautics Bd.*, 336 U.S. 601, 606, 69 S. Ct. 756 (1949).  A prior version of the Bankruptcy Abuse Prevention and Consumer Protection Act which was not enacted defined "projected monthly net income" for the means test to require a calculation of expenses as follows:

> (A) the expense allowances under the applicable National Standards, Local Standards, and Other Necessary Expenses allowance (excluding payments for debts) for the debtor . . . in the area in which the debtor resides as determined under the Internal Revenue Service financial analysis for expenses in effect as of the date of the order for relief.

H. R. Rep. 105-540 (May 18, 1998), H.R. 3150, 105th Congress (1998).

In the amendments that were enacted in 2005, the reference to the Internal Revenue Service financial analysis was removed.  Instead, as noted, the section states that a debtor is allowed to deduct the "applicable monthly expense amounts specified under the National and Local Standards." 11 U.S.C. § 707(b)(2)(A)(ii)(I).  "The change from the prior version evidences Congress' intent that the Courts not be bound by the financial analysis contained in the IRM and lends credence to the Court's conclusion that it should look only to the amounts set forth in the Local Standards."  *In re Fowler*, 349 B.R. 414, 419 (Bankr. D. Del. 2006).

In addition, the House Committee Report to the bill that was enacted states, "The bill also makes substantial changes to chapter 13 by substituting the IRS expense standards to calculate disposable income. . . .  *The formula remains inflexible and divorced from the debtor's actual circumstances.*"  Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256, H.R.Rep. No. 109-31, pt. 1 at 553 (2005) (emphasis added).  *See also In re Barr*, 341 B.R. 181, 185 (Bankr. M.D.N.C. 2006).

This legislative history establishes both that Congress was aware that the IRS standards were not the same as a debtor's actual expenses and that Congress did not intend to limit the bankruptcy means test expense deductions to the debtor's actual expenses.

In *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006), the court noted that early in the process of amending the bankruptcy code, chapter 13 trustees recognized that using the new means test of calculating disposable income would result in some high-income debtors paying less than under the previous code provisions. The chapter 13 trustees repeatedly made their concerns known to Congress, but to no avail. *Id.* at 747 (citing Marianne B. Culhane & Michaela M. White, Catching Can-Pay Debtors: Is the Means Test the Only Way?, 13 Am. Bankr. Inst. L. Rev. 665, 681 (2005). "'[T]his alert, followed by the Legislature's nonresponse, should support a presumption of legislature awareness and intention.'" 13 Am. Bankr. Inst. L. Rev. at 681 (quoting *Lamie*, 540 U.S. at 541, 124 S. Ct. 1023).

A few courts have argued that to accomplish one of the generally presumed purposes of the 2005 amendments– to pay more to creditors in chapter 13– an actual vehicle payment is required in order to deduct the applicable amount in the standard for the ownership expense in the bankruptcy means test. *See, e.g. Wilson*, 383 B.R. 729. That argument observes that a below-median debtor in chapter 13 can deduct only actual expenses, so it makes no sense to allow an above-median debtor to deduct an expense that may be higher than the debtor actually incurs.

However, this reliance on the general legislative history or intent of BAPCPA misses the point that the legislative history specific to this amended code section shows that Congress was aware of the IRM but deliberately chose not to incorporate it into the statute. This reliance also overlooks another purpose of the 2005 amendments- to create bright-line means test to eliminate judicial discretion. Accordingly, this argument in these cases must be rejected.

D. There is nothing explicit in the IRS Local Transportation Standard that requires a debtor to have a debt or lease payment to deduct a vehicle ownership expense in the bankruptcy means test.

As noted, the vehicle ownership expense is applicable in the bankruptcy means test through a statutory incorporation of the IRS Local Standards. Those standards provide for a vehicle ownership expense deduction based on the debtor's locale and number of vehicles owned. As in the statute that incorporates these standards into the means test, there is nothing in the IRS Local Standards that states that this expense can be deducted only when the debtor has either a debt payment or a lease payment on the vehicle. The trustee does not contend otherwise.

In this regard, it is also significant that the IRS has recently announced that it does not believe that its collection of financial standards in the IRM is applicable in bankruptcy:

***Disclaimer: IRS Collection Financial Standards are intended for use in calculating repayment of delinquent taxes. These Standards are effective on March 1, 2008 for purposes of federal tax administration only. Expense information for use in bankruptcy calculations can be found on the website for the U. S. Trustee Program.***

http://www.irs.gov/individuals/article/0,,id=96543,00.html.[7]

The website for the U.S. Trustee Program, to which the IRS refers viewers, advises that the ownership expense amount from the IRS Local Standard is designed for ease of use in completing the means test form, again suggesting that the applicable amount from the Local Standard is to be used in the means test form :

> The <u>Ownership Costs</u> component of the Transportation Standards is published on a national basis, by number of cars. This information, reproduced in a format designed for ease of use in completing these bankruptcy forms, is available at the following link.[8]

http://www.usdoj.gov/ust/eo/bapcpa/20070201/meanstesting.htm.

E. <u>The substantial discretion allowed to a revenue officer under the IRM is inconsistent with the purpose of the means test to adopt a uniform, bright-line test that eliminates judicial discretion.</u>

Congress intended that there be uniform and readily-applied formula for determining when the bankruptcy court should presume that a debtor's chapter 7 petition is an abuse and for determining an above- median debtor's disposable income in chapter 13. By explicitly referring to the National and Local Standards, Congress incorporated a table of standard expenses that could be easily and uniformly applied; Congress intended that the court and parties simply utilize the expense amount from the applicable column based on the debtor's income, family size, number of cars and locale. The amounts are entered into the means test form and a determination of disposable income is accomplished without judicial discretion. The clear policies behind the means test were the uniform application of a bright-line test that eliminates judicial discretion. Plainly, Congress determined that these policies were more important than accuracy.

---

[7] The website states, "The revised standards are effective for financial analysis conducted on or after March 1, 2008." *Id.*

[8] The "following link" refers to the viewer to a choice of census regions by which the Local Transportation Standards are organized.

However, if the IRM were used to determine the amounts of expenses, as the trustee argues, the means test would of necessity again be a highly discretionary test, because under the IRM, a revenue officer is afforded significant discretion in determining a taxpayer's ability to pay a tax debt. Many paragraphs illustrate this extent of this discretion, as the extended list below demonstrates.

The IRM first sets "Expectations," and in paragraph 6 of section 5.15.1.1, states:

> The standard amounts set forth in the national and local guidelines are designed to account for basic living expenses. *In some cases, based on a taxpayers individual fact's [sic] and circumstances, it may be appropriate to deviate from the standard amount when failure to do so will cause the taxpayer economic hardship.* (emphasis added)

Then, in an "Overview" of allowable expenses, paragraph 1 of section 5.15.1.7 provides:

> Allowable expenses include those expenses that meet the necessary expense test. *The necessary expense test is defined as expenses that are necessary to provide for a taxpayer's and his or her family's health and welfare and/or production of income.* The expenses must be reasonable. The total necessary expenses establish the minimum a taxpayer and family needs to live.

In describing the application of the local standards for housing, paragraph 4 of section 5.15.1.7 states:

> A. Housing– Standards are established for each county within a state. *When deciding if a deviation is appropriate, consider the cost of moving to a new residence; the increased cost of transportation to work and school that will result from moving to lower-cost housing and the tax consequences.* The tax consequence is the difference between the benefit the taxpayer currently derives from the interest and property tax deductions on Schedule A to the benefit the taxpayer would derive without the same or adjusted expense. (emphasis added)

In addressing a third type of "necessary expenses," which includes "other expenses," paragraph 5 of section 5.15.1.7 explicitly gives the collection agent discretion in analyzing this expense. It states, "Other expenses may be allowed may be allowed if they meet the necessary expense test. The amount allowed must be reasonable considering the taxpayer's individual facts and circumstances."

A revenue officer's discretion in allowing expenses above the national and local standards is made complete in paragraph 7 of section 5.15.1.7:

> *National local expense standards are guidelines. If it is determined a standard amount is inadequate to provide for a specific taxpayer's basic living expenses, allow a deviation.* Require the taxpayer to

provide reasonable substantiation and document the case file. (emphasis added)

A revenue officer even has discretion in counting the number of persons allowed in applying the applicable standards. Paragraph 8 of Section 5.15.1.7 states:

> Generally, the total number of persons allowed for national standard expenses should be the same as those allowed as dependents on the taxpayer's current year income tax return. Verify exemptions claimed on taxpayer's income tax return meet the dependency requirements of the IRC. *There may be reasonable exceptions.* Fully document the reasons for any exceptions. For example, foster children or children for whom adoption is pending. (emphasis added.)

An additional instance of discretion is found in the application of the national standards, which cover apparel, food, housekeeping supplies, personal care products and services, and miscellaneous. As to these, paragraph 3 of section 5.15.1.8 states, "A taxpayer that claims more than the total allowed by the national standards must substantiate and justify each separate expense of the total national standard amounts."

Addressing the local standard for housing and utilities, paragraph 1.A. of section 5.15.1.9 provides:

> The utilities include gas, electricity, water, fuel, oil, bottled gas, trash and garbage collection, wood and other fuels, septic cleaning, and telephone. Housing expenses include: mortgage or rent, property taxes, interest, parking, necessary maintenance and repair, homeowner's or renter's insurance, homeowner dues and condominium fees. Usually, this is considered necessary only for the place of residence. *Any other housing expenses should be allowed only if, based on a taxpayer's individual facts and circumstances, disallowance will cause the taxpayer economic hardship.* (emphasis added)

Similarly, in addressing the local standard for transportation expenses, paragraph 1.B. of section 5.15.1.9 states that this standard covers specified expenses, but that alternatives should be considered:

> Vehicle insurance, vehicle payment (lease or purchase), maintenance, fuel, state and local registration, required inspection, parking fees, tolls, driver's license, public transportation. Transportation costs not required to produce income or ensure the health and welfare of the family are not considered necessary. *Consider availability of public transportation if car payments (purchase or lease) will prevent the tax liability from being paid in part or full. Public transportation costs*

*could be an option if it does not significantly increase commuting time and inconvenience the taxpayer.* (emphasis added)

Finally, in addressing "other expenses," including accounting fees, legal fees, charitable contributions, child care, court-ordered payments, dependent care expenses, education, health care, involuntary deductions, life insurance, secured debts, unsecured debts, telephone, student loans, internet service, and loans to pay federal taxes, paragraph 1 of section 5.15.1.10 states:

> Other expenses may be considered if they meet the necessary expense test– they must provide for the health and welfare of the taxpayer and/or his or her family or they must be for the production of income. *This is determined based on the facts and circumstances of each case.* (emphasis added)

In further addressing other expenses, paragraph 3 of section 5.15.1.10 provides:

> *The amount allowed for necessary or conditional expenses depends on the taxpayer's ability to full pay the liability within five years and on the taxpayer's individual facts and circumstances.* If the liability can be paid within 5 years, it may be appropriate to allow the taxpayer the excessive necessary and conditional expenses. If the taxpayer cannot pay within 5 years, it may be appropriate to allow the taxpayer the excessive necessary and conditional expenses for up to one year in order to modify or eliminate the expense. (emphasis added)

These excerpts from the IRM Financial Analysis Handbook overwhelmingly establish that the process of applying the guidelines of the IRM for tax collection purposes is a highly discretionary process for a revenue officer. In reality, that process is much like the highly discretionary process that bankruptcy judges had utilized before the 2005 amendments to the bankruptcy code when determining the debtor's net disposable income under 11 U.S.C. § 1325(b). *Mancl v. Chatterton* (*In re Mancl*), 381 B. R. 537, 541-42 (W.D. Wis. 2008); *In re Spraggins*, 07-24728, __ B.R. __, 2008 WL 1744576 at *2 (Bankr. E.D. Wis. Apr. 11, 2008) (recognizing "Congressional intent to employ a bright-line test for disposable income by removing bankruptcy court 'value judgments' concerning the debtor's lifestyle"). *See also In re Behlke,* 358 F.3d 429 (6th Cir. 2004) (pre-BAPCPA case discussing discretionary nature of determining disposable income in context of § 707(b) dismissal for cause).

There is, however, nothing to suggest that Congress intended that highly discretionary process to continue after the 2005 amendments. To the contrary, all of the evidence suggests that Congress intended quite otherwise. Use of the IRM, as argued by the trustee, would clearly undermine the utility of the national and local standards in facilitating a uniform bright-line test that eliminates judicial discretion. This case is therefore about much more than the single issue of whether debtors

like the Kimbros may deduct the Local Standard for vehicle ownership expenses. If the trustee's view of the means test is sustained, then Congress would have failed in achieving its goals in adopting the means test, and courts would return to reviewing all above-median debtors' expenses on a case by case, discretionary basis.

F. The premise of the trustee's argument– that the IRM does not allow a vehicle ownership expense when there is no debtor or lease payment– is mistaken; the IRM gives a revenue office substantial discretion to consider and allow any expenses above the standards.

The IRM makes it clear that for tax collection purposes, the standards are only guidelines. Paragraph 7 of section 5.15.1.7, IRM, states, "National local expense standards are guidelines. If it is determined a standard amount is inadequate to provide for a specific taxpayer's basic living expenses, allow a deviation."

It is also worth repeating the quote from the Overview, paragraph 1, section 5.15.1.7:

> Allowable expenses include those expenses that meet the necessary expense test. *The necessary expense test is defined as expenses that are necessary to provide for a taxpayer's and his or her family's health and welfare and/or production of income.* The expenses must be reasonable. The total necessary expenses establish the minimum a taxpayer and family needs to live.

It is true that under the sections of the IRM quoted in footnote 4 above, vehicle ownership expenses are not generally allowed if the debtor has no debt or lease payment, but the trustee's premise that the IRM never allows a revenue officer to consider and allow such expenses in such circumstances is plainly mistaken. If necessary to provide for a taxpayer's basic living expenses or for reasons of health and welfare, ownership expenses should be allowed under the IRM.

This feature of the IRM, ignored by the trustee, reinforces this crucial point: Because discretion is built into the very fabric of the IRM, including the issue of allowing vehicle ownership expenses, applying the IRM to the bankruptcy means test, as the trustee advocates, would not achieve the result that the trustee seeks- to prohibit a deduction in the bankruptcy means test when the debtor has no debt or lease payment. Rather, it would simply return bankruptcy judges to determining this expense (and all others) on a case by case, discretionary basis, in direct contravention of Congress's stated goals in enacting the means test.

G. Contrary to the suggestion in some cases, every debtor who owns a vehicle incurs expenses arising from the ownership of the vehicle regardless of whether the debtor incurs a debt or lease payment associated with the vehicle.

Several cases assert that in the absence of any vehicle debt or lease payments, the debtor has no ownership expense and thus the Local Transportation Expense is properly disallowed. *See Wilson*, 383 B.R. at 732; *Fokkena*, 373 B.R. at 652.

This argument ignores the economic realities of vehicle ownership. The expenses of vehicle ownership are the fixed expenses that an owner incurs that naturally arise from ownership regardless of the vehicle's operation. By that definition, neither debt payments or lease payments are ownership expenses. Lease payments are not ownership expenses because by definition the debtor has no ownership. Debt payments are not ownership expenses because they are more naturally related to the necessities of financing the purchase. The expenses relating to vehicle ownership are the expenses for depreciation, insurance , licensing fees and taxes, each of which is a consequence of ownership and is incurred without regard to vehicle use. Ultimately, every vehicle owner incurs ownership expenses, and that is so regardless of debt or lease payments.

Certainly, those ownership expenses will vary widely from case to case. Plainly a debtor owning a newer vehicle will incur a much greater depreciation expense than a debtor owning an older vehicle, and some vehicles depreciate faster than others. Also, debtors' insurance and tax expenses will vary. But the policy of the means test simply does not contemplate such individual determinations. As noted, in enacting the 2005 amendments, Congress decided to give a higher priority to expediency and uniformity than to accuracy.

Because the ownership of a vehicle always involves an expense, it was neither absurd nor irrational for Congress to allow a uniform deduction in the bankruptcy means test for an ownership expense even when there is no debt or lease payment. To the contrary, given the goals, it was entirely appropriate for Congress to incorporate a uniform standard that recognizes an ownership expense for all debtors that own vehicles.[9]

---

[9] There is a justified concern that under this ruling, a debtor might claim a deduction for "a car rusting away in the back yard." *In re Ross-Tousey*, 368 B.R. 762, 768 (E.D. Wis. 2007). Indeed, a debtor might purchase such a car for a nominal sum in anticipation of filing bankruptcy. *See In re Moorman*, 376 B.R. 694, 699 (Bankr. C.D. Ill. 2007).

The reality is that people own cars for many reasons other than for transportation, such as to be a source of parts for other cars or to be collector cars for investment and recreation. In each case,

## IV. CONCLUSION

The Panel holds that in the bankruptcy means test, a debtor may deduct an ownership expense for a vehicle regardless of whether the debtor has a debt or lease payment on that vehicle. The bankruptcy court's decision is AFFIRMED.

---

however, the ownership expense for the bankruptcy means test is allowable only if the car is used for transportation, because the ownership and operating expenses are components of the transportation expense. In addition, as to the debtor who seeks to purchase a bankruptcy means test ownership deduction for the cost of a nominal sum of money and a space of a few square feet in the backyard, 11 U.S.C. § 105(a) still allows the bankruptcy court to prevent such an abuse of its process, when proven. *Marrama v. Citizens Bank of Mass.*, ___ U.S. ___, 127 S. Ct. 1105 (2007) (relying on "the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process' described in 105(a) of the Code.")

THOMAS H. FULTON, Bankruptcy Appellate Panel Judge, dissenting.

The other members of this Panel (the "Panel") have made a superb effort to weave a seemingly robust cloth from somewhat thin threads. I must, however, respectfully dissent. In doing so, I join with the majority of the bankruptcy courts and the overwhelming majority of appellate courts across the United States that have considered this issue, including the 8th and 9th Circuit BAPs. *See, e.g., In re Wilson*, 383 B.R. 729, 732-33 (B.A.P. 8th Cir. 2008) ("[W]hile bankruptcy courts have been divided on this issue, the appellate courts considering this question have all concluded that a vehicle ownership expense is only applicable if a debtor is in fact incurring such an expense."). Numerous jurists have considered this issue, and their rationales both for and against permitting debtors to deduct more than actual vehicle ownership expenses vary to some extent. *See, e.g., Grossman v. Sawdy (In re Sawdy)*, 384 B.R. 199, 202 (E.D. Wis. 2008). I will not retrace the well-worn paths around both sides of the issue. Rather, I would simply note my own particular concerns.

It is my belief that the Panel primarily falls short in misinterpreting the word "applicable" in the first sentence of 11 U.S.C. § 707(b)(2)(A)(ii)(I). The first sentence of 11 U.S.C. § 707(b)(2)(A)(ii)(I) states that "[t]he debtor's monthly expenses shall be the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . . ." (emphasis added.) The Panel believes that "applicable" simply directs the debtor to pick out and use the dollar amounts set forth in tables published by the Internal Revenue Service ("IRS") as part of its National Standards and Local Standards without reference to the IRS's guidelines for using those tables. In the Panel's words, the debtor will "just look them up."

I believe, however, that if "applicable" is to have any meaning at all in the context of 11 U.S.C. § 707(b)(2)(A)(ii)(I)[10], the debtor must look to the IRS's guidelines regarding the use of the tables set forth in the National Standards and Local Standards to determine the amount of

---

[10]As the Panel correctly notes, rules of statutory construction require that meaning must be given to a statute's every word. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S. Ct. 2326 (1979).

expenses that may be "applied" to reduce the debtor's monthly income.[11]  If Congress really did intend that the debtor just pull numbers from tables, the word "applicable" would not have been necessary in the first sentence of 11 U.S.C. § 707(b)(2)(A)(ii)(I).  The provision could simply have been written omitting the word "applicable" without changing its meaning, as follows: "The debtor's monthly expenses shall be the debtor's  monthly expense amounts specified under the National Standards and Local Standards...."  On the other hand, Congress' use of the word "applicable" makes a great deal of sense if one believes that Congress intended that the IRS's guidelines be used in consulting the National Standards and Local Standards.

Moreover, although the Panel believes that the relevant dollar amounts can be obtained from the National Standards and Local Standards if one were to "just look them up," that belief carries with it a built-in prejudice colored by the Panel's desired result.  It is, simply put, boot-strapping.  If one were to view the tables in the National Standards and Local Standards neutrally, it becomes obvious that one cannot really "just look up" dollar amounts in the tables without either referring to IRS guidelines for using the tables[12] or imposing pre-existing assumptions about how the tables are to be navigated.

Consider the table titled "Operating Costs" in the IRS Local Standards for "transportation."[13] The table consists of a heading, "Operating Costs," a column labeled "One Car" with dollar amounts beneath, a column labeled "Two Cars" with dollar amounts beneath, and a column appearing to be divided by region–Northeast, Midwest, South, West–and further divided by what appears to be larger cities or metropolitan areas.  The table alone does not describe the geographical boundaries of each "region" or "city."  Also, the table by itself does not tell a reader what the dollar amounts mean or

_____

[11]Some of these guidelines are included in the IRS Collection Financial Standards, *available at http://www.irs.gov/individuals/article/0,,id=96543.00*, which also include the tables that the Panel would have debtors use to "just look up" their expenses.  Guidelines also are  contained in greater detail in the Internal Revenue Service Manual, Financial Analysis Handbook, Pt. 5, ch 15 § 5.15.1.7, *available at http://www.irs.gov/irm/part5/ch15s 01.html#d0e200408*.  In general, the IRS intends that dollar amounts set forth in the tables in the Local Standards for "transportation" expenses be used as "caps"–the person in question may claim actual expenses up to those amounts.

[12]Notably, guidelines appearing on the same page as the table also state that "[t]he taxpayer is allowed the amount actually spent, or the standard, whichever is less." Surely the Panel does not suggest that we apply only some of the instructions and explanations and ignore others.

[13]*Available at http://www.irs.gov/businesses/small/article/0,,id=104623,00.html.*

how they are to be used. One must use the IRS guidelines–at least some of which appear on the same page as the table–first to locate the appropriate geographical location heading (*i.e.*, which Region or "city") and then to determine whether and how either amount is "applicable."

The Panel also makes too much of Congress's use of the phrase "actual expenses" in 11 U.S.C. § 707(b)(2)(A)(ii)(I) with regard to "the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides[.]" The Panel contrasts Congress's use of the phrase "applicable monthly expense amounts" with respect to the IRS National Standards and Local Standards and comes to the unwarranted conclusion that Congress must have intended that the two phrases have *opposite*, rather than merely *different*, meanings. I, however, believe that Congress intended and used the phrases "applicable monthly expense amounts" in the former case and "actual expenses" in the latter case simply in recognition of the differing ways in which the IRS uses the National Standards and Local Standards versus the Other Necessary Expenses categories.

According to IRS guidelines, depending on the type of expense being considered, persons may claim the full amount set forth in the pertinent table–*e.g.*, National Standards for "food, clothing and other expenses" and "out-of-pocket health care expenses"–or actual expenses up to the cap amount set forth in the pertinent table–e.g. Local Standards for "housing and utilities" and "transportation." Thus, it would have made no sense for Congress to have used the phrase "actual expenses" in the context of the National Standards and Local Standards because the expenses ultimately allowed might or might not be the person's actual expenses, depending on the nature of the expense and, in the case of housing, utilities and transportation expenses, whether the same exceeded the caps. Conversely, it makes eminent sense for Congress to have used "actual expenses" in the context of Other Necessary Expenses because the allowable expenses there are limited to the person's actual expenses that he or she can demonstrate are reasonable under that person's particular facts and circumstances.

Finally, the Panel's interpretation of the first sentence of 11 U.S.C. § 707(b)(2)(A)(ii)(I) will lead to results that are both absurd and at odds with Congressional intent. A simple illustration demonstrates this. Suppose, for example, that there is a debtor with nominal actual monthly expenses whose "current monthly income" multiplied by twelve is just one dollar above the applicable median income. Given the Panel's interpretation of 11 U.S.C. § 707(b)(2)(A)(ii)(I), that debtor would be *required* to claim the full amounts set forth in the tables in the National Standards and Local Standards even though that debtor's actual expenses are significantly lower. When subtracted from

the debtor's "current monthly income," such table-derived amounts could cause the debtor's "disposable income" to be negative and, therefore, insufficient to fund a confirmable Chapter 13 plan, whereas subtracting the debtor's actual expenses would not have such an effect. Contrast this result with a second debtor who has exactly the same actual expenses as the first debtor, and whose current monthly income multiplied by twelve is just one dollar less than that of the first debtor. The second debtor would be allowed to use his/her actual expenses to derive his/her disposable income and, accordingly, would be able to fund a confirmable Chapter 13 plan. The absurdity becomes readily apparent–a higher income debtor would be unable to propose a confirmable Chapter 13 plan whereas a slightly lower income debtor with exactly the same expenses would be able to propose a confirmable Chapter 13 plan.

Even if the above-median debtor could propose a confirmable Chapter 13 plan, he or she would be paying less to his/her creditors than the under-median income debtor. Thus, not only would the result be absurd, it would run directly contrary to Congressional intent. As noted by the 8th Circuit BAP in *In re Wilson*, "[a]lthough the legislative history to BAPCPA is scant and often difficult to piece together, there can be no doubt that the purpose of these amendments to §§ 707(b) and 1325(b) was to require above-median income debtors to make more funds available to their unsecured creditors, and to do so by limiting the court's authority to allow expenses." *In re Wilson*, 383 B.R. at 733.

As has been said many times before, nearly to the point of becoming a cliche, reasonable minds can and will differ. For the foregoing reasons, I respectfully dissent from the Panel's decision.