**In re Ermon L. BENTLEY, and Christina R. Bentley, Debtor.**

No. 08–2184.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Oct. 28, 2008.

Albert H. Mickler, Bryan K. Mickler, Jacksonville, FL, for Debtor.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court upon the Chapter 13 Trustee's Objection to Confirmation of Debtors' Proposed Chapter 13 Plan. After a hearing held on June 18, 2008, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

On April 22, 2008, Debtors filed their petition for relief under Chapter 13 of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Form 22 C of Debtors' schedules reflects that Debtors have an annualized income of $116,522.04, which places Debtors above the median family income for a family of four in Florida. The "Statement of Current Monthly Income and Calculation of Commitment Period" completed by Debtors indicates that they have a monthly disposable income of negative $13.48.

Debtors' Schedules B and D reflect that their 1999 Ford Mustang Coupe is not encumbered by a lien. The Chapter 13 Trustee (the "Trustee") filed an objection to confirmation of Debtors' Chapter 13 Plan upon the basis that the Debtors are improperly attempting to deduct $489 from their current monthly income, as an ownership expense for the Mustang. It is the position of the Trustee, that in order for a debtor to be entitled to deduct an ownership expense for a vehicle, the debtor must not own the vehicle free and clear. In response, Debtors assert that that they are entitled to the ownership expense deduction, as provided for in the IRS Local Transportation Standards, regardless of whether they have a monthly car payment, because they incur other expenses in maintaining the vehicle.

## CONCLUSIONS OF LAW

■ The issue before the Court is whether debtors, who do not have a debt or lease payment on a vehicle they own, are entitled to take a standard deduction for vehicle ownership expenses under the means test.

Prior to the enactment of BAPCPA it was within the broad discretion of the bankruptcy courts to determine whether a debtor's expenses were reasonable or not. However, with the enactment of BAPCPA came a clear line of demarcation between debtors who are classified as being above the median income of their state, and those classified as being below the median income of their state, based upon the number of individuals in their household. For above median debtors, there are strict guidelines set forth under BAPCPA as to what expenses will be allowed.[1] For above median debtors, "[a]mounts reasonably necessary to be expended under [§ 1325(b)(2) ]" are to be "determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." 11 U.S.C. § 1325(b)(3). Further, § 707(b)(2)(A)(ii)(I), provides in relevant part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability in-

---

1. This Court recently held that although an above median debtor's expenses must be determined by using Form B22C and the calculations set forth in §§ 707(a)(2)(A) and (B) that the Court will also look to § 707(b)(2)(B)(i) in instances where an above median debtor asserts that his or her expenses exceed those permitted by B22C. *In re Raulerson*, 395 B.R. 157, 161–62 (Bankr. M.D.Fla.2008).

surance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.

11 U.S.C. § 707(b)(2)(A)(ii)(I).

In the instant case, the IRS's Local Standards for Transportation, which subdivide a debtor's vehicle costs into the categories of Ownership Costs and Operating Costs are at issue. Specifically, the Court must determine whether the Debtors' are entitled to take a standard expense deduction for ownership costs, even though the vehicle they own is unencumbered by a lien. Two opposing views have emerged from courts which have considered the issue. Presently though neither school of thought can be deemed as the majority view.

### A. Theory for Disallowance of Deduction

In support of his position, the Trustee looks to the courts that have adopted the position that if a debtor's vehicle is not encumbered with a lien, the debtor is not entitled to deduct ownership expenses. *Ransom v. MBNA America Bank, N.A.*, 380 B.R. 799 (9th Cir.BAP2007); *See Grossman v. Sawdy*, 384 B.R. 199 (E.D.Wis.2008); *Wieland v. Thomas*, 382 B.R. 793 (D.Kan.2008); *Fokkena v. Hartwick*, 373 B.R. 645 (D.Minn.2007); *Neary v. RossTousey*, 368 B.R. 762 (E.D.Wis. 2007). The basis of rationale for this school of thought predominately revolves around these courts' interpretation of § 707(b) which states that the debtor's monthly expenses "shall be the debtor's applicable monthly expense amounts specified under the National and Local Standards ..." 11 U.S.C. § 707(b)(2)(A)(ii)(I). These courts define the term *"applicable"* to mean "capable of or suitable for being applied." Specifically, it is reasoned that "the deduction of the monthly expense amount specified under the Local Standard for the expense becomes relevant to the debtor when he or she in fact has such an expense." *Ransom*, 380 B.R. at 807–808. Thus, this theory ties the existence of ownership costs to having a car payment. Accordingly, courts that subscribe to this theory hold that debtors who do not have car payments may only take a deduction for operating costs and not those expenses associated with ownership costs. *See Ross–Tousey*, 368 B.R. at 766 (noting that "the statute is only concerned about protecting the debtor's ability to continue owning a car, and if the debtor already owns the car, the debtor is adequately protected ... When the debtor has no monthly ownership expenses, it makes no sense to deduct an ownership expense to shield it from creditors."). Courts which subscribe to this view also reason that to allow the deduction for debtors who do not have a car payment does not conform to the underlying purpose of the passage of BAPCPA. *Ransom*, 380 B.R. at 807(stating that its holding is in sync with the underlying purpose of BAPCPA which is to "ensure that debtors repay as much of their debt as reasonably possible."); *Wieland*, 382 B.R. at 798 (citing H.R.Rep. No. 109–31(I), 2005 U.S.C.C.A.N. 88, 89)("[T]hose amendments were 'intended to ensure that debtors repay creditors the maximum they can afford.'").

Some of these courts also look to the Internal Revenue Manuel ("IRM"), which explains how the IRS applies its standards to negotiations with delinquent taxpayers, for guidance. *See Fokkena*, 373 B.R. at 650 (describing the IRM as a "logical re-

source" for interpreting the standards); *Stapleton v. Talmadge,* 371 B.R. 96, 101 (Bankr.M.D.Pa.2007)(considering the IRM's guidelines to be controlling). Specifically, § 5.15.1.7(4B) of the IRM provides that a delinquent taxpayer must have a lease payment prior to taking the vehicle ownership costs deduction. It is important to note, however, that the Bankruptcy Code does not contain a statutory reference to the IRM.

## B. Theory for Allowance of Deduction

In contrast, Debtors rely upon decisions from courts that have taken the approach that a debtor may take a vehicle ownership expense even if the vehicle is not encumbered by a lien. *In re Pearson,* 390 B.R. 706 (10th Cir. BAP 2008); *Hildebrand v. Kimbro,* 389 B.R. 518 (6th Cir. BAP 2008); *In re Young,* 392 B.R. 6, 2008 WL 3274425 (Bankr.D.Mass. Aug.8, 2008); *In re Osei,* 389 B.R. 339 (Bankr.S.D.N.Y.2008); *In re May,* 390 B.R. 338 (Bankr.S.D.Ohio 2008); *In re Moorman* 376 B.R. 694 (Bankr. C.D.Ill.2007); *In re Chamberlain,* 369 B.R. 519 (Bankr.Ariz.2007). Under this approach, the word *'applicable'* is viewed as being a reference to the amount listed in the table of the Local Standards. These courts begin their analysis with the language of the statute, which provides as follows: The debtor's monthly expenses shall be the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides ... 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added).

Based upon this language, it is reasoned that "the use of the term *'applicable'* means that determining whether a standard allowance amount applies to a specific debtor depends on the factors specified in the standard rather than the debtor's actual expense." *May,* 390 B.R. at 344. Under this theory, whether a debtor receives the vehicle ownership deduction should be determined by looking to the factors in the Ownership Costs table, which takes into consideration how many vehicles a debtor owns and not whether the debtor has a monthly car payment. *May,* 390 B.R. at 348 (reasoning that, "if the criteria found in the Local Standard Ownership Costs table does not require the debtor to have a car expense, there is nothing in the language of the statute that adds such a limitation. A review of the standard reveals that it is a national amount given to all debtors for 'One Car' or 'Two Cars.' "); *Kimbro,* 389 B.R. at 521–22; *Moorman,* 376 B.R. at 699; *Chamberlain,* 369 B.R. at 524. Further, as the court in *May* astutely reasoned § 707(b)(2)(A)(iii) was enacted by Congress to give debtors a separate deduction for their average monthly payments on secured debt. *May,* 390 B.R. at 347. "Consequently, the allowance for vehicle ownership costs pursuant to the IRS Local Standards under § 707(b)(2)(A)(ii)(I) must be something other than a debtor's actual monthly car payment. Any other reading renders the two provisions redundant or creates the absurdity of allowing debtors to deduct their monthly car payment twice." *Id.*

Additionally, in response to the argument that the standards set forth in the IRM should be followed, courts in favor of allowing the deduction note that Congress could have explicitly referenced the IRM's guidelines in the Bankruptcy Code, if its intent was to make its provisions controlling. *Id.; Kimbro,* 389 B.R. at 524–25; *Chamberlain,* 369 B.R. at 525. It is also of

interest to note that although a reference to the IRM was originally contained in early versions of BAPCPA, the reference did not make it into the final version. *May*, 390 B.R. at 345. In fact, courts have noted that the reference to the IRM was specifically left out, as the IRM guidelines not only have very little application in the realm of bankruptcy, but are in some instances in conflict with the applicable standards under the Code. *May*, 390 B.R. at 345 (stating that the IRM guidelines "have little application to Congress' adoption of IRS standards in bankruptcy as fixed allowances to provide a uniform system for evaluating a debtor's expenses"); *In re Smith*, 2007 WL 1836874 at *9 (Bankr. N.D.Ohio June 22, 2007)(stating that "IRS guidelines reflect IRS policy relating to collection of tax debts, not Congressional policy under the bankruptcy means test"); *In re Hice*, 376 B.R. 771, 775 (Bankr.D.S.C.2007)(noting various ways in which the IRM's guidelines differ from how the standards are used in bankruptcy). The court in *Kimbro* also reasoned that because a revenue officer is given significant discretion under the IRM, in determining a taxpayer's ability to pay a tax debt, the utilization of the IRM in bankruptcy would be inconsistent with Congress' intent when it created the means test. Specifically, the court in *Kimbro* stated that the application of the IRM in the bankruptcy context "would clearly undermine the utility of national and local standards in facilitating a uniform bright-line test that eliminates judicial discretion." *Kimbro*, 389 B.R. at 529–30.[2]

Moreover, a few courts have noted the IRS's recent announcement that it does not think that the IRM is applicable in bankruptcy. *Id.* at 527; *Young*, at 11; *Osei*, 389 B.R. at 355. The disclaimer provides:

> **Disclaimer: IRS Collection Financial Standards are intended for use in calculating repayment of delinquent taxes. These Standards are effective on March 1, 2008 for purposes of federal tax administration only. Expense information for use in bankruptcy calculations can be found on the website for the U.S. Trustee Program.**

> http:// www. irs. gov/ individuals/ article/ 0,, id= 96543, 00. html.[3]

■ Upon consideration, the Court finds that pursuant to the language contained in § 707(b)(2)(A)(ii)(I), in conjunction with the IRS Local Standards for Transportation, a debtor's entitlement to take a vehicle ownership deduction is not predicated upon whether the debtor owns the vehicle free and clear, but upon the number of vehicles owned by the debtor. As the court in *May* accurately reasoned, "[t]he only reasonable reading of *applicable* in this context is that the criteria of the National and Local Standards themselves determine which deductions a debtor may take. In other words, if the criteria found in the Local Standard Ownership Costs table does not require the debtor to have a car expense, there is nothing in the statute that adds such a limitation." *May*, 390 B.R. at 348 (emphasis added). Additional-

---

**2.** For example, IRM Paragraph 6 of § 5.15.1.7, states: The standard amounts set forth in the national and local guidelines are designed to account for basic living expenses. *In some cases, based on a taxpayer's individual fact's [sic] and circumstances, it may be appropriate to deviate from the standard amount*

*when failure to do so will cause the taxpayer economic hardship. (emphasis added).*

**3.** The IRS's website states, "The revised standards are effective for financial analysis conducted on or after March 1, 2008."

ly, this Court respectfully disagrees with those courts that have utilized the standards set forth in the IRM as guidance in reaching a determination as to this issue. Clearly, if it was Congress' intent to incorporate the IRM into the Bankruptcy Code it would have done so. However, the IRM was not incorporated into the Bankruptcy Code and therefore this Court does not find it appropriate to either extend the application of the IRM or to impose standards used for delinquent taxpayers upon debtors who have filed bankruptcy in order to receive a "fresh start."

### C. Policy Considerations

Although the Court has already determined that Debtors are entitled to the vehicle ownership expense deduction, the Court finds that a brief discussion of policy considerations is warranted. It is the policy of this Court that it looks to what is on the table at the time of confirmation. Thus, the Court does not permit Chapter 13 debtors to deduct "phantom" payments such as mortgage payments upon which they are no longer liable. *In re Holmes,* 395 B.R. 149 (Bankr.M.D.Fla. March 17, 2008). The instant case, however, does not deal with such "phantom" payments. As the court in *Kimbro* accurately noted, "expenses of vehicle ownership are fixed expenses that an owner incurs that naturally arise from ownership regardless of the vehicle's operation." *Kimbro,* 389 B.R. at 531. The court in *Kimbro* also accurately reasoned that, "expenses relating to vehicle ownership are the expenses for depreciation, insurance, licensing fees and taxes, each of which is a consequence of ownership and is incurred without regard to vehicle use. Ultimately, every vehicle owner incurs ownership expenses, and that is so regardless of debt or lease payments." *Id.* The court in *Pearson* also

persuasively opined that "it makes little sense to deny an ownership deduction to a frugal debtor who, although he has fully paid for his used car, finds himself in need of bankruptcy relief, while allowing the deduction to a more "aggressive" debtor who has acquired a late model car by incurring a large secured debt." *Pearson,* 390 B.R. at 715; *see also Osei,* 389 B.R. at 356 (stating that "[i]nstead of rewarding those debtors who attempt to be frugal in order to have more "cushion" between their plan payments and actual expenses in hopes of improving their chances successfully to complete all plan payments, it would punish them for doing so.")

The Court agrees with the reasoning set forth in *Kimbro, Pearson* and *Osei.* For the Court to find that a debtor must have a car payment in order to incur "ownership expenses" would produce an unfair result based upon an unrealistic theory. Thus, this Court will not subscribe to the fiction that a debtor must incur a car payment in order to qualify for an allowance of "ownership expenses." To hold otherwise, would fail to recognize the realistic expenses that debtors incur in the maintenance of their vehicles. In essence it would "punish" the frugal debtor who does not have the additional monthly expense of making a car payment. Although the Court recognizes that a primary purpose of BAPCPA is to get as much money to creditors as possible, it is also the Court's job to see that a realistic framework by which debtors can succeed in Chapter 13 is in place.

### CONCLUSION

Based upon the above, the Court finds that Debtors are entitled to take the vehicle ownership expense deduction, and accordingly the Trustee's Objection to Con-

firmation is overruled. The Court will enter a separate order that is Consistent with these Findings of Fact and Conclusions of Law.