### In re Victor W. MAY, Jr., Marilyn R. May, Debtors.

### No. 07–32994.

United States Bankruptcy Court, S.D. Ohio, Western Division at Dayton.

July 7, 2008.

Lester R. Thompson, Dayton, OH, for Debtors.

Jeremy Shane Flannery, Office of the United States Trustee, Mary Anne Wilsbacher, U.S. Trustee Office, Columbus, OH, for U.S. Trustee.

### DECISION DENYING CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION

LAWRENCE S. WALTER, Bankruptcy Judge.

### *FACTUAL AND PROCEDURAL BACKGROUND*

On July 11, 2007, Debtors Victor W. May and Marilyn R. May ("Debtors") filed their joint chapter 13 bankruptcy petition and Official Form 22C indicating that their income is above the median income for households of their size in Ohio. This dispute pertains to a deduction taken by the Debtors on Form 22C which is used to calculate the Debtors' disposable income and the payments that the Debtors are required to commit to their chapter 13 plan. On Line 29 of the form, the Debtors claimed a $332.00 deduction for an ownership expense on their second vehicle based on IRS Transportation Standards [Doc. 1, Official Form 22C, Line 29]. All parties agree that the Debtors' second vehicle is unencumbered by liens.

The chapter 13 Trustee objected to the Debtors' deduction on Line 29 of the form and the United States Trustee ("UST") filed a memorandum in support [Docs. 34 and 35].[1] They argued that the Debtors should not be allowed to claim a "phantom" standardized deduction for a vehicle that the Debtors own outright and for which they have no financing expenses. Following a hearing held on December 18, 2007, the Debtors, chapter 13 Trustee and UST filed supplemental briefs [Docs. 47, 48 and 49, respectively] and the matter is now ready for determination.

## LEGAL ANALYSIS

The issue in this case involves the calculation of a debtor's reasonably necessary expenses related to vehicle ownership for purposes of calculating a debtor's disposable income and, ultimately, the amount needed to fund a chapter 13 plan.[2] More specifically, can debtors who own one or two cars but make no car payment take a standard expense deduction for vehicle ownership thus lowering the amount of "disposable income" or funds available to pay unsecured creditors over the life of the debtor(s)'s chapter 13 plan?

Historically, the calculation of a chapter 13 debtor's monthly expenses to be subtracted from a debtor's income as required in 11 U.S.C. § 1325(b)(2) was straightforward with courts given broad discretion to determine the reasonableness of any claimed expense. However, the formula changed with the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). "Following the enactment of BAPCPA, the Bankruptcy Code now divides debtors into two categories, based on whether their income is above or below median income for their state. For those below the median, the determination of reasonableness of expenses is largely unaffected by BAPCPA. But for those above the median, BAPCPA imposes strict limitations on various categories of expenses." *Babin v. Wilson (In re Wilson)*, 383 B.R. 729, 731 (8th Cir. BAP 2008).

For above-median income debtors, such as the Debtors in this case, "[a]mounts reasonably necessary to be expended under [§ 1325(b)(2) ]" are to be "determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)[.]" 11 U.S.C. § 1325(b)(3). Section 707(b)(2), which is also used as the "means test" formula to

**1.** The chapter 13 Trustee originally objected to the Debtors' chapter 13 plan for various reasons, including the Debtors' vehicle ownership deduction, in August of 2007 [Doc. 15]. Following that original objection, the chapter 13 Trustee, United States Trustee, and the Debtors engaged in a long period of negotiating their positions related to the vehicle ownership deduction, as well as other aspects of the Debtors' Form 22C and plan through the filing of many plan amendments, forms, briefs and memoranda. [See Docs. 15, 20, 25, 26, 28, 30, 31, 34 and 35]. The analysis in these documents is repetitive and, consequently, the court only cites to the most recent filings of each party in this decision. It should also be noted that, by the date of the hearing held on December 18, 2007, the only issue that remained for the court to determine was the Debtors' vehicle ownership deduction on Line

29 of the means test form. As such, this decision does not address any of the other issues raised by the chapter 13 Trustee in his original objection to the Debtors' chapter 13 plan.

**2.** "Disposable income" is calculated by determining a debtor's "current monthly income" and subtracting out "amounts reasonably necessary to be expended ... for the maintenance or support of the debtor or a dependent of the debtor[.]" 11 U.S.C. § 1325(b)(2). In order to have a chapter 13 plan approved over the objection of the trustee or creditor, the debtor must submit all of his or her projected disposable income to unsecured creditors over the life of the plan. 11 U.S.C. § 1325(b)(1).

determine abuse in a chapter 7 case, provides in relevant part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. . . .

11 U.S.C. § 707(b)(2)(A)(ii)(I).

The National and Local Standards referred to in § 707(b)(2)(A)(ii)(I) are certain expense allowances developed by the Internal Revenue Service ("IRS") for the agency's internal use in collection disputes with delinquent taxpayers. They are part of the Collection Financial Standards used by the IRS to provide a consistent guide for determining what a delinquent taxpayer can afford to pay when the agency evaluates offers-in-compromise and installment agreement proposals. *See In re Smith,* 2007 WL 1836874, at *5 (Bankr. N.D.Ohio June 22, 2007); Matthew Stephenson & Kristen Hickman, *The Administrative Law of Borrowed Regulations: Legal Questions Regarding the Bankruptcy Law's Incorporation of IRS Standards,* 2008 No. 1 Norton Bankr.L. Adviser 1 (Jan.2008). The standards are found in web-based tables on the IRS's website at *http://www.irs.gov/individuals/article/0,, id=96543,00.html.*[3] National Standards, for food, clothing and other items, are numerical amounts that apply nationwide. Local Standards, for housing, utilities, and transportation, are broken down by geographical areas/regions. A third category, Other Necessary Expenses, includes items

---

**3.** An interesting note: at the top of the IRS website appears the following disclaimer, "IRS Collection Financial Standards are intended for use in calculating repayment of delinquent taxes. These Standards are effective on March 1, 2008 for purposes of federal tax administration only. Expense information for use in bankruptcy calculations can be found on the website for the U.S. Trustee Program." The page redirects the user to the U.S. Trustee's website, *http://www.usdoj.gov/ ust/eo/bapcpa/meanstesting.htm* where similar unofficial tables can be found as those on the IRS's website, although the U.S. Trustee's website allows the user to browse historical tables deemed applicable on a specific bankruptcy filing date. Unfortunately, when the IRS updates its tables, which it does on a regular basis, there is no methodology in place for deciding when and if those updates become applicable to bankruptcy cases. Also unclear is whether the appropriate place for a bankruptcy practitioner to find the applicable tables is the IRS's website or the U.S. Trustee's website with its unofficial tables organized based on internal decision-making as to when IRS updates become applicable to newly filed bankruptcy cases. Even more troubling, the IRS tables mandated for use in bankruptcy cases have not been subject to the rigors of § 553 of the Administrative Procedure Act including its notice and comment provisions, a general requirement of administrative rule-making. For two overviews of the complex problems associated with Congress's decision to borrow an unrelated administrative agency's internal standards to apply in bankruptcy cases, *see* Keith Lundin, *Second Warning: New National Standards and Local Standards Issued by IRS—Maybe,* 2008 No. 5 Norton Bankr.L. Adviser 3 (May 2008); Matthew Stephenson and Kristin Hickman, *The Administrative Law of Borrowed Regulations: Legal Questions Regarding the Bankruptcy Law's Incorporation of IRS Standards,* 2008 No. 1 Norton Bankr.L. Adviser 1 (Jan.2008).

such as child care, education, taxes, mandatory payroll deductions, health care and telecommunication services. For these Other Necessary Expenses, § 707(b)(2)(A)(ii)(I) clarifies that a debtor is allowed to deduct the actual amount that the debtor spends on a monthly basis, without any specified limitation on the expense.

The focus of this case is the IRS's Local Standards for Transportation which, postBAPCPA, provides debtors with their allowable expense amounts for vehicle ownership and use. The IRS's Local Standards for Transportation are divided into two components: Operating Costs and Ownership Costs. The Operating Costs component is broken down by region, but the Ownership Costs component is given as a nationwide amount available for up to a maximum of two vehicles. The

Ownership Costs table applicable on the date of the Debtors' bankruptcy filing appeared like this on the IRS website: [4]

### Ownership Costs

| National | One Car | Two Cars |
| --- | --- | --- |
| | $471 | $803 |

The critical issue created by the language of § 707(b)(2)(A)(ii)(I) in conjunction with the use of this table is whether the amounts given in the table may be used as deductions by all debtors who own one or two cars or only by debtors who actually have car payments. The issue has divided courts across the nation with at least forty-three bankruptcy courts, four district courts, and three bankruptcy appellate panels weighing in on the issue to date.[5] *See In re Sawicki*, 2008 WL 410229, at *2

4. As discussed in the previous footnote, the only method by which this court was able to locate historical IRS standards applicable on a specific bankruptcy filing date was to search the unofficial tables on the U.S. Trustee's website. This poses a problem. The current official Ownership Costs table on the IRS's website gives a $489 allowance for "One Car" and a $978 allowance for "Two Cars." However, the labeling of the table and how the allowances are figured has been modified on the U.S. Trustee's website. The current "unofficial" Ownership Costs table on the U.S. Trustee's website provides a $489 allowance for the "First Car" and a $489 allowance for the "Second Car." Based on these current differences and the inability of the court to search historical tables on the IRS's website, it remains unclear exactly what the official IRS's Transportation Standards looked like on the date the debtors filed their bankruptcy petition in July of 2007. In this instance, the court does not believe that the differences between the tables on the IRS's website and those on the U.S. Trustee's website have an impact on the meaning of the tables in terms of when a debtor may take the allowance. Nonetheless, it does highlight the fact that the IRS updates its standards regularly and the standards are modified further when trans-

ferred to the U.S. Trustee's website for use in bankruptcy cases. None of these updates and modifications is subject to any clear regulatory controls or oversight which this court finds disturbing given the serious impact these standards now have on the bottom line in a chapter 13 bankruptcy case—i.e. how much income a debtor in bankruptcy may retain to pay monthly expenses and how much must be paid over to creditors each month over the lifetime of a three or five year plan.

5. Some of the courts have faced the issue in different contexts. For example, many of the cases involve the proper allowance of the vehicle ownership expense in determining abuse in a Chapter 7 context. *See, e.g., Wieland v. Thomas*, 382 B.R. 793 (D.Kan.2008); *Smith*, 2007 WL 1836874. Other cases consider a different IRS Local Standard to determine whether a debtor can take a standardized home ownership expense when the debtor has no mortgage payment. *In re Morgan*, 374 B.R. 353 (Bankr.S.D.Fla.2007); *In re Farrar–Johnson*, 353 B.R. 224 (Bankr. N.D.Ill.2006). Although the context is different, the critical analysis of the language of § 707(b) and the use of the IRS standards is the same and equally applicable to the issue to be resolved in the case at hand.

(Bankr.D.Ariz. February 12, 2008) (collecting many of the cases).

## A. Courts Disallowing Deduction

On one side of the debate are the courts holding that debtors may not deduct ownership expenses for vehicles that are unencumbered by liens. This is also the holding of many "appellate" courts, i.e. district courts and bankruptcy appellate panels, that have considered the issue to date. *See Grossman v. Sawdy*, 384 B.R. 199 (E.D.Wis.2008); *Wilson*, 383 B.R. 729; *Wieland v. Thomas*, 382 B.R. 793 (D.Kan. 2008); *Ransom v. MBNA America Bank, N.A. (In re Ransom)*, 380 B.R. 799 (9th Cir. BAP 2007); *Fokkena v. Hartwick*, 373 B.R. 645 (D.Minn.2007); *Neary v. Ross–Tousey (In re Ross–Tousey)*, 368 B.R. 762 (E.D.Wis.2007).

Courts not allowing the deduction generally begin with the statutory language of § 707(b) which states that the debtor's monthly expenses "shall be the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards...." 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added). These courts define the term "applicable" to mean "capable of or suitable for being applied." *See, e.g., Ransom*, 380 B.R. at 807–08 (quoting from *Merriam–Webster's Collegiate Dictionary* 60 (11th ed.2005)). Based on this definition, these courts hold that "the deduction of the monthly expense amount specified under the Local Standard for the expense becomes relevant to the debtor (i.e., appropriate or applicable to the debtor) when he or she in fact has such an expense." *Ransom*, 380 B.R. at 807. *See also Ross–Tousey*, 368 B.R. at 764–65; *In re Carlin*, 348 B.R. 795, 798 (Bankr.D.Or.2006). Consequently, a debtor who owns a car outright and has no car payment may only take a deduction for operating costs and not ownership costs.

In further support of their conclusion, these courts often consult IRS guidelines found in the Internal Revenue Manual ("IRM") which explains how the IRS applies its standards to negotiations with delinquent taxpayers. According to the Financial Analysis Handbook, a section of the IRM:

> The Transportation standards consist of nationwide figures for loan or lease payments referred to as ownership cost, and additional amounts for operating costs broken down by Census Region and Metropolitan Statistical Area.... If a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense. If a taxpayer has no car payment only the operating cost portion of the transportation standard is used to figure the allowable transportation expense.

Internal Rev. Man. § 5.15.1.7(4B) (http://www.irs.gov/irm/part5/ch15s01.html). This section of the IRM clarifies that the IRS requires a delinquent taxpayer to actually have a loan or lease payment before taking the vehicle Ownership Costs deduction. However, there is no statutory reference to the IRM in the Bankruptcy Code. While the use of the IRM is not mandated by or even referenced in the Code, courts relying on the IRM consider it at least instructive if not dispositive of how Congress intended the standards to be interpreted in bankruptcy. *Fokkena*, 373 B.R. at 650 (describing the IRM as a "logical resource" for interpreting the standards); *Stapleton v. Talmadge (In re Talmadge)*, 371 B.R. 96, 101 (Bankr.M.D.Pa.2007) (considering the IRM's guidelines to be controlling).

Finally, these courts reason that disallowing the deduction for debtors who have no car payment comports with the purposes of BAPCPA itself. "[T]hose amend-

ments were 'intended to ensure that debtors repay creditors the maximum they can afford.'" *Wieland,* 382 B.R. at 798 (citing H.R.Rep. No. 109–31(I), 2005 U.S.C.C.A.N. 88, 89). If a debtor is permitted a car ownership allowance when he actually has no such expense, use of the means test in chapter 7 and 13 cases would not accurately reflect the debtor's ability to repay creditors and "the purpose of the statute would be frustrated." *Id. See also Ross–Tousey,* 368 B.R. at 766 (noting that the "statute is only concerned about protecting the debtor's ability to continue owning a car, and if the debtor *already* owns the car, the debtor is adequately protected.... When the debtor has no monthly ownership expenses, it makes no sense to deduct an ownership expense to shield it from creditors").

## B. Courts Allowing the Deduction

On the other side of the debate are the courts allowing a debtor to take the vehicle ownership costs deduction even if the debtor owns the vehicle free and clear of liens. Joining this group of bankruptcy courts is the Sixth Circuit Bankruptcy Appellate Panel which recently entered the fray and became the first appellate level court to allow the deduction for unencumbered vehicles. *Hildebrand v. Kimbro (In re Kimbro),* 389 B.R. 518 (6th Cir. BAP 2008).

Courts allowing the deduction also begin with the language of the statute:

The debtor's monthly expenses shall be the debtor's *applicable* monthly expense *amounts* specified under the National Standards and Local Standards, and the debtor's *actual* monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Reve-

nue Service for the area in which the debtor resides....

11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added). They note that Congress decided that a debtor shall deduct his or her *"actual* monthly expenses" for "Other Necessary Expenses" but "the debtor's *applicable* monthly expense *amounts*" for expenses found in the National and Local Standards. *Kimbro,* 389 B.R. at 523–24, 2008 WL 2369141 at *4; *In re Farrar–Johnson,* 353 B.R. 224, 230–31 (Bankr. N.D.Ill.2006); *In re Fowler,* 349 B.R. 414, 418 (Bankr.D.Del.2006). Thus, these courts deem that Congress intended two different applications and, consequently, something other than a debtor's actual expenses must be used for categories under the National and Local Standards. *Kimbro,* 389 B.R. at 523–24, 2008 WL 2369141, at *4; *Farrar–Johnson,* 353 B.R. at 230–31; *Fowler,* 349 B.R. at 418.

More specifically, these courts conclude that the use of the term "applicable" means that determining whether a standard allowance amount applies to a specific debtor depends on the factors specified in the standard rather than the debtor's actual expense. *Kimbro,* 389 B.R. at 522–24, 2008 WL 2369141, at *3–4; *In re Egbert,* 384 B.R. 818, 828 (Bankr.E.D.Ark.2008); *In re Moorman,* 376 B.R. 694, 699 (Bankr. C.D.Ill.2007); *In re Chamberlain,* 369 B.R. 519, 523–24 (Bankr.D.Ariz.2007). Thus, the vehicle Ownership Costs deduction for a specific debtor can only be determined by reference to the factors in the Ownership Costs table. *Moorman,* 376 B.R. at 699; *Smith,* 2007 WL 1836874, at *7; *Chamberlain,* 369 B.R. at 524. Applicability of expense amounts in the Ownership Costs table depends on number of vehicles owned [6] rather than whether the Debtor

---

**6.** Depending on whether the Debtor refers to the standards as they appear on the U.S. Trustee's website or the IRS's website, the labeling of the Ownership Costs table provides allowances for a "First Car" and a

has a car payment associated with the vehicle(s). *Kimbro*, 389 B.R. at 521–22, 2008 WL 2369141, at *2; *Moorman*, 376 B.R. at 699; *Smith*, 2007 WL 1836874, at *7; *Chamberlain*, 369 B.R. at 524.

These courts further reject consideration of the IRM and, in particular, the Financial Analysis Handbook, to aid interpretation of the standards. They note that if Congress wanted the IRM's guidelines to be controlling, Congress could have explicitly referenced the IRM in the Bankruptcy Code. *Kimbro*, 389 B.R. at 524–25, 2008 WL 2369141, at *5; *Chamberlain*, 369 B.R. at 525. Indeed, early versions of the bill that eventually became BAPCPA mentioned use of the IRS's financial analysis in the IRM.[7] The fact that reference to the IRM was discarded in the final version of BAPCPA " 'lends credence to the Court's conclusion that it should look only to the amounts set forth in the Local Standards' " without reference to the IRM's interpretation. *Kimbro*, 389 B.R. at 525–26, 2008 WL 2369141, at *6 (citing *Fowler*, 349 B.R. at 419).

Congress may well have declined adoption of the IRM because the manual's purpose is simply not applicable in bankruptcy. *In re White*, 382 B.R. 751, 757–58 (Bankr.C.D.Ill.2008); *Smith*, 2007 WL 1836874, at *9 ("IRS guidelines reflect IRS policy relating to collection of tax debts, not Congressional policy under the bankruptcy means test"). The IRS intends the IRM's provisions as flexible nonbinding guidelines to aid revenue officers using the standards in negotiating delinquent tax issues with taxpayers. *Kimbro*, 389 B.R. at

527–29, 2008 WL 2369141, at *8–9 (describing in great detail the significant discretion provided to revenue officers using the IRM to determine a taxpayer's ability to pay debt); *White*, 382 B.R. at 757–58. These guidelines have little application to Congress's adoption of IRS standards in bankruptcy as fixed allowances to provide a uniform system for evaluating debtors' expenses. *See Kimbro*, 389 B.R. at 529–30, 2008 WL 2369141, at *10; *White*, 382 B.R. at 757–58. Furthermore, certain provisions of the IRM, including its treatment of the Local Standards as caps on actual expenses rather than fixed allowances, conflict with the way the standards apply in bankruptcy. *See Smith*, 2007 WL 1836874, at *9; *In re Hice*, 376 B.R. 771, 775 n. 9 (Bankr.D.S.C.2007) (noting various ways in which the IRM's guidelines differ from how the standards are used in bankruptcy). In rejecting the use of the IRM, these courts further add that there is no basis for deferring to the IRS's administrative expertise since it is not an agency that administers the Bankruptcy Code. *Chamberlain*, 369 B.R. at 525.

Finally, these courts conclude that allowing a debtor with no car payment to take a vehicle Ownership Costs deduction is neither unreasonable nor absurd. *White*, 382 B.R. at 758; *Chamberlain*, 369 B.R. at 526. First, car payments are not the only source of vehicle ownership costs. Debtors who own their vehicle outright still have expenses associated with ownership that may not be covered in the Operating Costs component of the Local Standard for Transportation. *Kimbro*, 389 B.R. at 530–32, 2008 WL 2369141, at *11–

---

"Second Car" or for "One Car" and "Two Cars."

**7.** One prior version of the bill stated: "(A) the expense allowances under the applicable National Standards, Local Standards, and Other Necessary Expenses allowance (excluding payments for debts) for the debtor ... in the

area in which the debtor resides as determined under the Internal Revenue Service financial analysis for expenses in effect as of the date of the order for relief." H.R. Rep. 105–540 (May 18, 1998), H.R. 3150, 105th Congress (1998).

12. Indeed, within the IRM's guidelines, the IRS recognizes the shortcomings of the Operating Costs component of the Local Standards for taxpayers with older unencumbered vehicles. *See* Internal Rev. Man. § 5.8.5.5.2(3). Consequently, it is reasonable that Congress would provide these debtors with an Ownership Costs deduction for these expenses. Second, one of the purposes of BAPCPA was to make the means test in chapter 7 and disposable income test in chapter 13 more uniform on a national basis by eliminating variations in expenses allowed from debtor to debtor, trustee to trustee and court to court. *White,* 382 B.R. at 758 (noting that the use of fixed expense allowances levels the playing field for debtors); *Moorman,* 376 B.R. at 699 (concluding that "Congress intended to limit judicial discretion and to create objective—perhaps, even rigid and inflexible—standards for expense deductions"); *Chamberlain,* 369 B.R. at 526. By allowing all debtors with vehicles to take the vehicle Ownership Costs deduction, this approach avoids arbitrary distinctions between debtors who have only a few car payments left at the time of their bankruptcy filing and those who finished making their car payments just before the filing. *White,* 382 B.R. at 758 (noting that it is "far less defensible from a policy perspective for a debtor with one car payment remaining at the time of filing to get the full standard deduction for the 60–month term of the chapter 13 plan, while a debtor who paid off the secured debt before filing gets no deduction whatsoever"); *Moorman,* 376 B.R. at 699. *See also* Eugene R. Wedoff, *Means Testing in the New § 707(b),* 79 Am. Bankr.L.J. 231, 258 (Spring 2005).

## C. This Court's Conclusion

■ While this court was drafting its decision, the Bankruptcy Appellate Panel for the Sixth Circuit ("BAP") decided the *Kimbro* case in favor of allowing debtors to take the vehicle Ownership Costs deduction for their unencumbered vehicles pursuant to 11 U.S.C. § 707(b)(2)(A)(ii)(I). 389 B.R. 518. This court independently came to the same conclusion. Although meritorious concerns and persuasive arguments have been raised by courts on both sides of the debate,[8] the conclusion reached by the BAP and other courts allowing the deduction best comports with the plain meaning of Congress's chosen words in the statute and the language of the IRS standards the statute adopts. Consequently, the court will follow the well-reasoned decision of the BAP and allow the Debtors in this case to take the deduction for their unencumbered second vehicle.

■ As it has noted in prior decisions, the court's first obligation when interpreting a statute is to apply its plain meaning. *In re Kolb,* 366 B.R. 802, 807 (Bankr. S.D.Ohio 2007) (applying tools of statutory interpretation in considering BAPCPA modifications to 11 U.S.C. § 1325(b)). Indeed, the Supreme Court has clearly held that when the statute's language is plain and the outcome is not absurd, the sole function of the court is to enforce it according to its terms. *Id.* (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000)). As other courts have noted, the juxtaposition of the terms "actual expenses" in connection with deductions denoted as Other Necessary Expenses and "applicable monthly expense *amounts*" in connection with deductions

---

**8.** As one court noted, "... discerning the intended function of the IRS expense allowances is like trying to solve a riddle wrapped in a mystery inside an enigma...." *White,* 382 B.R. at 754.

found in the National and Local Standards leaves only one discernable meaning: with respect to the IRS's National and Local Standards, including the Ownership Costs Standard, debtors are to take the applicable monthly expense amounts found in the standards rather than use their actual monthly car expenses.

Furthermore, viewing the statute holistically, this reading is the only one that provides meaning to the expense allowances provided in § 707(b)(2)(A)(ii)(I) and the separate secured debt allowance in § 707(b)(2)(A)(iii). *See In re Echeman*, 378 B.R. 177, 180 (Bankr.S.D.Ohio 2007) (recognizing that courts cannot read words or even sub-sections of a statute in isolation; instead, statutory construction is a holistic endeavor requiring all relevant statutory provisions be read together). Congress enacted § 707(b)(2)(A)(iii) to give debtors a separate deduction for their average monthly payments on secured debt including their monthly car payment.[9] *In re Anderson*, 383 B.R. 699, 709 (Bankr.S.D.Ohio 2008). Consequently, the allowance for vehicle ownership costs pursuant to the IRS Local Standards under § 707(b)(2)(A)(ii)(I) must be something other than a debtor's actual monthly car payment. Any other reading renders the two provisions redundant or creates the absurdity of allowing debtors to deduct their monthly car payment twice. *Anderson*, 383 B.R. at 709 n. 19; *White*, 382 B.R. at 756 (recognizing the "double deduction dilemma" created by clause (ii) and (iii) of § 707(b)(2)(A)). After what the court can only guess involved much head scratching and debate, the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States ("Rules Committee") addressed the relationship between these statutory provisions when drafting Official Form 22C by allowing debtors to take the full amount of the IRS Local Standard for vehicle ownership costs but requiring debtors to subtract from that amount their average secured monthly car payment deducted pursuant to § 707(b)(2)(A)(iii). The court agrees with the Rules Committee that this "netting" process is the only reasonable manner in which to give separate meaning to the IRS's Local Standard allowances under § 707(b)(2)(A)(ii)(I) and the secured debt allowance pursuant to § 707(b)(2)(A)(iii).[10] *See also Anderson*, 383 B.R. at 709 n. 19 (recognizing that this netting approach provides the most "holistic reading of the

**9.** The language of 11 U.S.C. § 707(b)(2)(A)(iii) provides an expense allowance in Chapter 13 cases for:

**(iii)** The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—
    **(I)** the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
    **(II)** any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

**10.** A quizzical sentence in § 707(b)(2)(A)(ii)(I), "Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts," has also been interpreted by some courts to support the netting process adopted by the Rules Committee on Form 22C. *See In re Hardacre*, 338 B.R. 718, 726–27 (Bankr.N.D.Tex.2006). Other courts, including the BAP, interpret the sentence to be even more directly applicable to the issue before the court: that the expenses allowed under the standards are not for debt payments and, consequently, a debtor can take a vehicle ownership expense deduction notwithstanding the lack of a car payment. *Kimbro*, 389 B.R. at 523–24, 2008 WL 2369141, at *4.

statutory allowed expenses in § 707(b)(2)(A)").

Determining that § 707(b)(2)(A)(ii)(I) allows debtors to take the fixed amount found in the IRS's Local Standard rather than their actual monthly car payment does not end the debate because most courts agree that the Local Standards are not intended as "caps" when used in bankruptcy.[11] The real issue dividing courts is whether a car payment is required as a sort of trigger before a debtor can take the vehicle ownership costs deduction.

According to courts on one side, the language of § 707(b)(2)(A)(ii)(I), and especially the term "applicable," limits the vehicle Ownership Costs deduction to those debtors that actually have a car payment. However, that view is not supported by the language of the statute. Section 707(b)(2)(A)(ii)(I) places no limitations on a debtor's deductions beyond choosing the debtor's applicable monthly expense amounts specified under National and Local Standards. *See Kimbro*, 389 B.R. at 523–24, 2008 WL 2369141, at *4 (noting that the statutory language does not specifically address vehicle ownership expenses beyond the reference to the standards). The only reasonable reading of "applicable" in this context is that the criteria of the National and Local Standards themselves determine which deductions a debtor may take. *See Smith*, 2007 WL 1836874, at *8; *Chamberlain*, 369 B.R. at 524 (noting that "[i]t takes a tortured reading to make 'applicable' refer to anything else"). In other words, if the criteria found in the Local Standard Ownership Costs table does not require the debtor to have a car expense, there is nothing in the language of the statute that adds such a limitation. A review of the standard reveals that it is a national amount given to all debtors for "One Car" or "Two Cars."[12] Neither the standard nor the language of the statute requires a debtor to do anything more than own a vehicle to take the vehicle ownership costs deduction.

■ Even though the statute and the standard do not require a debtor to have a car payment, some courts turn to the IRM to support the requirement. Indeed, the IRM requires delinquent tax payers to actually have a car expense because it treats the amount in the Ownership Costs Standard as a cap on the taxpayer's actual car expense. However, reliance on the IRM to interpret how the IRS standards should be used in bankruptcy is not authorized by the language of the statute. *Kimbro*, 389 B.R. at 524–25, 2008 WL 2369141, at *5. Furthermore, the IRM is inapplicable as an interpretative tool because the IRM was drafted for a completely different purpose than Congress's purpose for adopting the IRS standards in bankruptcy. As other courts have noted, the IRM is an internal IRS manual intended to provide revenue officers with a flexible and discretionary system of calculating expenses for negotiating with delinquent taxpayers. *Kimbro*, 389 B.R. at 527–30, 2008 WL 2369141, at *8–10. In contrast, Congress adopted the IRS standards in bankruptcy to provide a fixed set of expense allowances to debtors in order to level the playing field and to eliminate judicial discretion as to what expenses are reasonable. *Id.* Because of its discretionary and flexible interpretations, use of the

---

11. *But see In re Rezentes*, 368 B.R. 55, 62 (Bankr.D.Hawai'i 2007) (treating the Local Standard housing expense as a cap).

12. As noted before, the table has been modified on the U.S. Trustee's website to provide the allowance based on a "First Car" and "Second Car." However, the court feels that these innocuous changes to the labels do not have an impact on the court's analysis.

IRM in bankruptcy "would clearly undermine the utility of national and local standards in facilitating a uniform bright-line test that eliminates judicial discretion." *Id.*, 389 B.R. at 529–30*10.

The flawed reliance on the IRM by judges to interpret the IRS standards is best underscored by the Local Standard for Ownership Costs itself. Courts relying on the IRM often adopt its interpretation of the standard to the extent it requires a debtor to have a car payment but reject its interpretation of the same standard as a cap on a debtor's actual car expense. *See, e.g., Fokkena,* 373 B.R. 645; *In re Owsley,* 384 B.R. 739 (Bankr.N.D.Tex.2008). Permitting courts to comb through the voluminous IRM to pick and choose what provisions make sense to apply and which to reject in bankruptcy is not statutorily authorized and injects great uncertainty into the process of determining a debtor's expenses, something Congress sought to avoid when adopting these fixed standards.[13] *See In re Armstrong,* 370 B.R. 323, 331 (Bankr.E.D.Wash.2007). In adopting the IRS's standards, but not its other publications, Congress "put together

a new statutory scheme in the Means Test that intentionally departs from various IRS procedures for determining what a debtor in bankruptcy—not a taxpayer in an IRS matter—can afford to pay." *Hice,* 376 B.R. at 776. Consequently, the court rejects the use of the IRM as an aid in interpreting how the Local Standards apply in bankruptcy.

The court concludes that the language of § 707(b)(2)(A)(ii)(I) in conjunction with the IRS Local Standards for Transportation allows a debtor to take a deduction for vehicle ownership costs based on the number of vehicles owned regardless of whether the debtor pays a car payment for the vehicle(s). As other courts have recognized, this result is neither unreasonable nor absurd. Owners of vehicles have ownership costs beyond a car payment and Congress may well have intended the deduction to cover those costs for unencumbered vehicles. *Kimbro,* 389 B.R. at 530–32, 2008 WL 2369141, at *11–12. Furthermore, providing the deduction to all debtors who own vehicles is in harmony with Congress's adoption of a more formulaic approach to expenses in order to level the

---

13. Another example of the tenuous use of the IRM in bankruptcy is the additional $200 operating expense deduction some courts allow debtors to take for older unencumbered vehicles. *Wilson,* 383 B.R. at 734; *Wieland,* 382 B.R. at 798–99; *Fokkena,* 373 B.R. at 652; *In re Slusher,* 359 B.R. 290, 310 (Bankr. D.Nev.2007). In fact, the U.S. Trustee proposes providing the Debtors in this case with this $200 additional operating expense deduction as an alternative to the Ownership Costs deduction for their second vehicle. The U.S. Trustee's basis for the additional operating expense is that the IRS provides the $200 deduction to taxpayers who own older vehicles. However, this additional $200 deduction for older vehicles cannot be found in the IRS's Local Standards for Transportation. Instead, its genesis is the IRM itself, specifically Internal Rev. Man. § 5.8.5.5.2(3) which states: "... depending on the age and/or condition of the vehicle, the complete disallow-

ance of the ownership expense may result in a transportation expense allowance that does not adequately meet the necessary expenses of the taxpayer .... in situations where the taxpayer owns a vehicle that is currently over six years old and/or has reported mileage of 75,-000 miles or more, an additional operating expense of $200 will generally be allowed for the collection period that remains after the loan/lease has been 'retired' plus the operating expense." Courts allowing this additional $200 operating expense deduction found only in the IRM have gone beyond using the IRM as an interpretive guide. Instead, they permit the IRM's flexible guidelines to modify the fixed monetary amounts provided in the IRS standards themselves. Such use of the IRM is not authorized by the statutory language of § 707(b)(2)(A)(ii)(I) and is not in line with Congress's intention of using IRS standards to create a system of fixed expense deductions in bankruptcy.

playing field for debtors and stifle judicial discretion. The reality is that Congress replaced the pre-BAPCPA method of calculating an above-median income debtor's plan payments using actual expenses with this system of fixed and uniform expenses "to give a higher priority to expediency and uniformity than to accuracy." *Kimbro*, 389 B.R. at 532, 2008 WL 2369141, at *12. One consequence of this uniform system is that some debtors will have leftover income each month. If this consequence was somehow unanticipated, it is for the legislature, and not this court, to amend the statute. *See Echeman*, 378 B.R. at 182 n. 6 (noting that it is not for the court to determine a statutory scheme is absurd just because it is poorly written or has unintended consequences).

### CONCLUSION

For the reasons stated above, the Objection to Confirmation filed by the chapter 13 Trustee is **DENIED.**

**SO ORDERED.**