**In re Richard Alderdice WISHAM, a/k/a Richard A. Wisham Surveying, and Michelle Lorraine Wisham, Debtors.**

No. 3:08–bk–3977–PMG.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

June 5, 2009.

Richard A. Perry, Trow & Perry, Ocala, FL, for Debtors.

## ORDER ON CONFIRMATION OF CHAPTER 13 PLAN

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court to consider confirmation of the Amended Chapter 13 Plan filed by the Debtors, Richard Alderdice Wisham and Michelle Lorraine Wisham.

The Chapter 13 Trustee filed a written Objection to Confirmation of the Debtors' Plan. (Doc. 16). In the Objection, the Trustee asserts:

Per 11 U.S.C. § 1325(b)(3), the Debtors have provided a "Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income" which appears to be incorrectly completed. The Debtor(s) may have disposable income which is not being applied to the unsecured creditors.

Specifically, the Trustee contends that the Debtors improperly calculated their "disposable income" for purposes of § 1325(b) of the Bankruptcy Code by deducting the IRS standard vehicle ownership costs from their total monthly income. According to the Trustee, debtors are not permitted to deduct such ownership costs with respect to vehicles that are not encumbered by any liens.

### Background

The Debtors filed a petition under Chapter 13 of the Bankruptcy Code on July 8, 2008.

On their Schedule of Assets, the Debtors disclosed an interest in two vehicles. The vehicles are identified as a 2003 Chevrolet Silverado truck and a 2002 Dodge Durango. On their "Schedule D—Creditors Holding Secured Claims," the Debtors listed GMAC as a creditor holding a lien on the 2003 Chevrolet Silverado. No liens were scheduled with respect to the 2002 Dodge Durango.

At the time that the Debtors filed their Petition and Schedules, they also filed their Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Official Form 22C). According to the Form, the Debtors' "annualized current monthly income" is $77,400.00, which exceeds the applicable median income for a family of two.

The Debtors were therefore required to calculate their deductions from income in accordance with Form 22C, in order to determine their monthly disposable income for purposes of § 1325(b)(2) of the Bankruptcy Code.

In response to Item 27A on Form 22C, the inquiry for vehicle operation expense, the Debtors entered the "Operating Costs" amount from IRS Local Standards: Transportation chart for the applicable number of vehicles in the applicable area.

In response to Item 28 on Form 22C, the inquiry for transportation ownership expense, the Debtors indicated that they

owned two or more vehicles. Form 22C therefore directs the Debtors (1) to enter the "IRS Transportation Standards, Ownership Costs" for each car from the "IRS Local Standards: Transportation," and (2) to subtract the "Average Monthly Payment" for any debts secured by the vehicle. The difference is the "net ownership expense" for each vehicle. In accordance with these instructions, the Debtors indicated that the net ownership expense for the first vehicle is $433.54, and that the net ownership expense for the second vehicle is $489.00. For two vehicles, this procedure is provided on Lines 28 and 29 of the Form.

Line 38 of the Form is for the total of the expenses allowed under the IRS Standards, which includes the amounts listed on Lines 24A through 37. These expenses include the vehicle operation expenses from Line 27A, and the net ownership expenses of the vehicles from Lines 28 and 29.

On Line 47 of Form 22C, the inquiry for future payments on secured claims, the Debtors entered the "Average Monthly Payment" for the debt secured by the first vehicle, as directed by the Form.

Line 58 of Form 22C is for the total adjustments to determine disposable income. This total includes the vehicle operation expenses, the net ownership expense for each vehicle, and the average monthly payment for the debt secured by one of the vehicles.

The total of all allowed adjustments is subtracted from the total current monthly income to determine the Debtors' "Monthly Disposable Income Under § 1325(b)(2)," which is entered on Line 59. After performing the computations required by the Form, the Debtors listed their monthly disposable income as $139.66.

The Debtors filed their original Chapter 13 Plan with their Petition and Schedules. (Doc. 3). The original Plan provided that the Debtors would make payments in the amount of $500.00 per month to the Trustee for a period of sixty months. The funds would be distributed to pay administrative expenses, the secured claim held by GMAC, and unsecured creditors.

The Trustee objected to confirmation of the Plan. (Doc. 16). Generally, the Trustee asserts that the Debtors' Form 22C was completed incorrectly, and that the Debtors are not submitting all of their disposable income to the Plan.

On November 20, 2008, the Debtors filed an Amended Chapter 13 Plan. (Doc. 32). In the Amended Plan, the Debtors propose to pay the Trustee the sum of $500.00 per month for four months, and the sum of $735.00 per month for the following 56 months.

The Trustee maintains, however, that "as of the effective date of the plan, the plan did not provide for all of the Debtors' projected disposable income necessary to fund the unsecured claims." According to the Trustee, the Debtors' monthly disposable income is greater than the figure shown on Form 22C, because the Debtors improperly deducted net ownership expenses for a vehicle that is not encumbered by any liens. "Specifically, the Trustee argues that if the Debtors were to eliminate the incorrect deduction for the line 29 automobile expense, the disposable income as calculated by the Means Test, would increase by that dollar amount." (Doc. 52, p. 2).

### Discussion

If a Chapter 13 Trustee objects to confirmation of a Plan, § 1325(b)(1) of the Bankruptcy Code provides that the Plan cannot be approved unless all of the debtor's "projected disposable income" will be applied to pay the claims of unsecured creditors. 11 U.S.C. § 1325(b)(1). The term "projected disposable income" is not defined in the Bankruptcy Code.

Section 1325(b)(2), however, generally provides that "disposable income" is the current monthly income received by the debtor, less "amounts reasonably necessary to be expended" for the maintenance or support of the debtor or the debtor's dependents. 11 U.S.C. § 1325(b)(2).

Section 1325(b)(3) provides that the "amounts reasonably necessary to be expended" by a debtor shall be determined in accordance with § 707(b)(2) of the Bankruptcy Code, if the debtor receives current monthly income greater than the median income for a family in the debtor's state with the same number of individuals as the debtor's family. 11 U.S.C. § 1325(b)(3).

In this case, the Debtors' annualized current monthly income exceeds the median income for a family of two in the state of Florida. Consequently, § 707(b)(2) governs the calculation of the Debtors' reasonably necessary expenses for purposes of determining their disposable income.

Section 707(b)(2) provides in part:

(ii)(I) The debtor's monthly expenses shall be *the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides,* as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. . . .

11 U.S.C. § 707(b)(2)(A)(ii)(I)(Emphasis supplied). "The National and Local Standards to which 11 U.S.C. § 707(b)(2)(A)(ii)(I) refers are the Collection Financial Standards used by the Internal Revenue Service ('IRS') to determine a taxpayer's ability to pay a de-

linquent tax liability." *In re Morgan,* 374 B.R. 353, 356 (Bankr.S.D.Fla.2007).

To calculate reasonably necessary expenses and disposable income pursuant to § 707(b)(2), § 1325(b)(2), and § 1325(b)(3) of the Bankruptcy Code, chapter 13 debtors are required to prepare Official Form 22C and file it with the Court. Fed. R.Bankr.P. 1007(b)(6). Official Form 22C is divided into the following sections:

Part I. Report of Income

Part II. Calculation of § 1325(b)(4) Commitment Period

Part III. Application of § 1325(b)(3) for Determining Disposable Income

Part IV. Calculations of Deductions from Income

    Subpart A: Deductions under Standards of the Internal Revenue Service

    Subpart B: Additional Living Expense Deductions

    Subpart C: Deductions for Debt Payment

    Subpart D: Total Deductions from Income

Part V. Determination of Disposable Income under § 1325(b)(2)

Part VI. Additional Expense Claims

"In chapter 13, Form 22C is used to calculate, *inter alia,* how many years a debtor must pay into a chapter 13 plan (the 'applicable commitment period'), and how much 'disposable income' a debtor must pay to his/her unsecured creditors over the term of the plan." *In re Thissen,* 400 B.R. 776, 778 (Bankr.E.D.Cal.2009).

Line 28 of Official Form 22C appears in Subpart A of Part IV of Form 22C, relating to deductions from income under the IRS Standards. Line 28 instructs debtors to state whether they claim an ownership/lease expense for one vehicle or for two or more vehicles. Lines 28 and 29 then instruct debtors (1) to enter the "IRS Transportation Standards, Ownership

Costs" for each car from the "IRS Local Standards: Transportation," (2) to subtract from that amount the "Average Monthly Payment for any debts secured by" the respective vehicle, and (3) to enter the difference as the "Net ownership/lease expense" for each vehicle. On Line 58 of Form 22C, the "net ownership expense" for each vehicle is included in the amount that constitutes the total adjustments to income, and the total adjustments are subtracted from the debtors' total monthly income to arrive at the amount entered on Line 59, the debtor's "disposable income" under § 1325(b)(2).

The Debtors in this case did not enter a debt payment for their second vehicle, because their 2002 Dodge Durango does not constitute security for any loan or financing arrangement. Accordingly, the Debtors entered the amount of $489.00 on Line 29 of Form 22C as the "net ownership expense" for their second vehicle. The amount represents the ownership costs for one vehicle as specified in the IRS Transportation Standards, without deduction for any debt payments. Consequently, on Line 59 of Form 22C, the Debtors subtracted the full amount of the IRS Standard "Ownership Costs" from their monthly income when they calculated their monthly disposable income under § 1325(b)(2) of the Bankruptcy Code.

The issue in this case, therefore, is whether the Debtors are permitted to deduct the IRS standard vehicle ownership costs from their total monthly income for purposes of calculating their "projected disposable income" under § 1325(b) of the Bankruptcy Code, even though the vehicle is not subject to any lien or security transaction.

The Chapter 13 Trustee contends that the deduction should not be permitted for three primary reasons: (1) the expense deduction would not be allowed under IRS guidelines, (2) the expense is not an "actu-

al" expense, and (3) allowance of the deduction would violate congressional intent. (Doc. 52).

## A. The IRS Guidelines

■ First, the Chapter 13 Trustee asserts that the ownership cost for an unencumbered vehicle should not be allowed as a deduction from the Debtors' total monthly income because the expense would not be allowed under IRS guidelines. (Doc. 52, pp. 6–9).

Section 707(b)(2)(A)(ii)(I) provides that a debtor's expenses include the "applicable monthly expense amounts specified under the National Standards and Local Standards ... issued by the Internal Revenue Service ... as in effect on the date of the order for relief." The IRS Standards include a category for transportation expenses, which in turn consists of a subcategory for operation expenses and a subcategory for ownership expenses.

"The National and Local Standards referred to in § 707(b)(2)(A)(ii)(A) are certain expense allowances developed by the Internal Revenue Service ('IRS') for the agency's internal use in collection disputes with delinquent taxpayers. They are part of the Collection Financial Standards used by the IRS to provide a consistent guide for determining what a delinquent taxpayer can afford to pay when the agency evaluates offers-in-compromise and installment agreement proposals." *In re May*, 390 B.R. 338, 341 (Bankr.S.D.Ohio 2008). Pursuant to the express terms of § 707(b)(2)(A)(ii)(A), the Standards applicable to a particular bankruptcy case are the Standards that are in effect on the date that the bankruptcy petition was filed. 11 U.S.C. § 707(b)(2)(A)(ii)(I).

The Collection Financial Standards used by the IRS, including the National and Local Standards, are located on the IRS website. It is difficult to determine the

specific Standards that were in effect on a given petition date, however. Although the IRS regularly updates its Standards, "there is no methodology in place for deciding when and if those updates become applicable to bankruptcy cases." *In re May*, 390 B.R. at 342 n. 3. Because of the periodic changes in the Standards and the absence of historical information on the IRS website, "it remains unclear exactly what the official IRS's Transportation Standards looked like on the date the debtors filed their bankruptcy petition." *In re May*, 390 B.R. at 342 n. 4.

The Local Transportation Standards that currently appear on the IRS website, for example, include certain explanations as to how the expense allowances should be applied.[1] The current Standards are effective as of March 1, 2009.

In the case presently before the Court, however, the Debtors had filed their bankruptcy petition on July 8, 2008. As of that petition date, it appears that there may have been "no explanation or elaboration in the Local Standards as to when a taxpayer may take a particular deduction." *In re Ralston*, 400 B.R. at 865. The Standards were "compiled in a table format," and did "not state or suggest that a taxpayer must have a debt or lease payment for the revenue officer to deduct the applicable ownership expense." *In re Kimbro*, 389 B.R. 518, 522 (6th Cir. BAP 2008).

Although it appears that the IRS has added explanatory comments to the Local Transportation Standards, at the outset of those comments the IRS states: "IRS Collection Financial Standards are intended for use in calculating repayment of delinquent taxes. These Standards are ... *for purposes of federal tax administration only. Expense information for use in bankruptcy calculations can be found on* *the website for the U.S. Trustee Program.*" (Emphasis supplied.)

The website of the U.S. Trustee Program contains the IRS Local Transportation Expense Standards. The information is presented in "table format" only, and does not contain the explanatory comments that now accompany the IRS Collection Financial Standards. Additionally, the information is presented in a manner that enables a determination of the standards applicable at the date a case was filed.

Nevertheless, the Chapter 13 Trustee in this case asserts that the Local Standards should be applied in bankruptcy cases in the same manner that they are applied by the IRS for tax collection purposes. (Doc. 52)(citing *In re McGuire*, 342 B.R. 608 (Bankr.W.D.Mo.2006) and *In re Carlin*, 348 B.R. 795 (Bankr.D.Or.2006)). The IRS applies the Local Standards to particular taxpayers in accordance with an Internal Revenue Manual, Financial Analysis Handbook. *In re Kimbro*, 389 B.R. at 521. According to the Trustee, the IRS guidelines provide that a taxpayer who owns an unencumbered vehicle is only entitled to the operation expenses contained in the Local Standards, but not the ownership expenses. (Doc. 52, p. 7).

The Court finds that the practices utilized by the IRS do not apply to determine a debtor's projected disposable income under § 1325(b) of the Bankruptcy Code.

The most compelling reason to reject the application of the IRS guidelines in bankruptcy cases is the legislative history of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA). A prior version of BAPCPA included proposed language that would have defined a debtor's expenses as:

---

1. See http://www.irs.gov/individuals/article/0,,id=96543,00.html and http://www.irs.gov/ businesses/small/article/0,,id=104623,00.html.

(A) the expense allowances under the applicable National Standards, Local Standards, and Other Necessary Expenses allowance (excluding payments for debts) for the debtor ... in the area in which the debtor resides *as determined under the Internal Revenue Service financial analysis for expenses in effect as of the date of the order for relief.*

Consumer Bankruptcy Reform Act of 1998 (Introduced in House), H.R. 3150, § 101, 105th Congress (1998)(Emphasis supplied). This proposed provision was removed, however, prior to the enactment of BAPCPA in 2005.

Instead, as set forth above, the version of § 707(b) that was ultimately enacted provides that a debtor's expenses include "the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards." 11 U.S.C. § 707(b)(2)(A)(ii)(I). No reference to the Internal Revenue Manual (IRM), guidelines, or "financial analysis" appears in BAPCPA as enacted. "The change from the prior version evidences Congress' intent that the Courts not be bound by the financial analysis contained in the IRM and lends credence to the Court's conclusion that it should look only to the amounts set forth in the Local Standards." *In re Fowler,* 349 B.R. 414, 419 (Bankr.D.Del.2006)(quoted in *In re Kimbro,* 389 B.R. 518, 526 (6th Cir. BAP 2008)). In other words, "the legislative history specific to this amended code section shows that Congress was aware of the IRM but deliberately chose not to incorporate it into the statute." *In re Kimbro,* 389 B.R. at 526–27.

For other cases that reject the application of the IRM based on the legislative history of BAPCPA, see *In re Ralston,* 400 B.R. 854 (Bankr.M.D.Fla.2009)(Chapter 7); *In re Bentley,* 400 B.R. 848 (Bankr.

M.D.Fla.2008); and *In re Pearl,* 394 B.R. 309, 313 (Bankr.N.D.N.Y.2008).

Additionally, the structure of Form 22C further supports the conclusion that the IRS guidelines should not be used to determine a debtor's vehicle ownership expense under § 707(b)(2)(A)(ii)(I). Under the IRS guidelines, a taxpayer's debt payment may be allowed as a deduction, limited by the amount of the Standard vehicle ownership cost. Form 22C, however, instructs debtors to subtract their average monthly debt payment from the Standard ownership cost, leaving a "net" ownership cost as a transportation expense. The average monthly debt payment is then allowed as a deduction in a later part of the Form related to future payments on secured claims, in accordance with § 707(b)(2)(A)(iii) of the Bankruptcy Code. *In re Ralston,* 400 B.R. at 866, 868.

The Committee Notes that accompany Form 22C acknowledge that the process under the IRS guidelines differs from the calculation set forth in Form 22C. "Each of the amounts specified in the Local Standards are treated by the IRS as a cap on actual expenses, but because § 707(b)(2)(A)(ii) provides for deductions in the 'amounts specified under the ... Local Standards,' the forms treat these amounts as allowed deductions." 2005 Advisory Committee Note, § C.1. The ownership deductions are allowed, of course, in the "net" amount that results after subtracting the debt payment on the vehicle, which is the subject of a separate deduction under § 707(b)(2)(A)(iii). "The court agrees with the Rules Committee that this 'netting' process is the only reasonable manner in which to give separate meaning to the IRS's Local Standard allowances under § 707(b)(2)(A)(ii)(I) and the secured debt allowance pursuant to § 707(b)(2)(A)(iii)." *In re May,* 390 B.R. at 347.

Finally, courts that have declined to apply the IRS guidelines have also noted that the result is consistent with Congress' intent to provide a uniform method to establish a debtor's expenses. It appears, for example, that the IRM grants internal revenue officers broad discretion in deciding whether a taxpayer may deduct a particular expense. In enacting BAPCPA, however, Congress intended to set forth a mechanically applied formula to be used in determining a debtor's disposable income. *In re Ralston*, 400 B.R. at 866. Consequently, reliance on the IRM to determine a debtor's expenses is contrary to a primary objective of BAPCPA to provide uniform allowances under § 1325(b). *See also In re Kimbro*, 389 B.R. at 527–30; *In re Bentley*, 400 B.R. at 852; and *In re Pearl*, 394 B.R. at 314.

Based on congressional intent and the legislative history of BAPCPA, the Court finds that the IRS guidelines do not apply in bankruptcy cases to preclude the Debtors from deducting the standard ownership costs for an unencumbered vehicle in their calculation of disposable income.

### B. Actual expenses

Second, the Chapter 13 Trustee asserts that the ownership cost for an unencumbered vehicle should not be allowed as a deduction from the Debtors' total monthly income because the expense is not an "actual" expense. (Doc. 52, pp. 10–12).

As set forth above, § 707(b)(2) provides in part:

> (ii)(I) The debtor's monthly expenses shall be the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards, and the debtor's *actual* monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, ....

11 U.S.C. § 707(b)(2)(A)(ii)(A)(Emphasis supplied).

Courts that have considered the issue of whether only "actual" expenses should be allowed as deductions from income on Form 22C have focused on the juxtaposition of the word "applicable" to describe permitted expenses under the Local Standards, and the word "actual" to describe expenses permitted as Other Necessary Expenses.

In *In re Burbank*, 401 B.R. 67 (Bankr. D.R.I.2009), for example, the Court recently stated:

> Although it is not an easy call, I respectfully disagree with the Trustee, and adopt the reasoning and conclusion of the Seventh Circuit in *Ross–Tousey*, where the Court held that the plain language of the statute clearly differentiates between "applicable" expenses and "actual" expenses, as follows:
>
>> In order to give effect to all words of the statute, the term "applicable monthly expense amounts" cannot mean the same thing as "actual monthly expenses." Under the statute, a debtor's "actual monthly expenses" are only relevant with regard to IRS's "Other Necessary Expenses;" they are not relevant to deductions taken under the Local Standards, including the transportation ownership deduction. Since "applicable" cannot be synonymous with "actual," applicable cannot reference what the debtor's actual expense is for a category. . . . We conclude that the better interpretation of "applicable" is that it references the selection of the debtor's geographic region and number of cars [in the household].

*In re Burbank*, 401 B.R. at 72(quoting *In re Ross–Tousey*, 549 F.3d 1148, 1158 (7th Cir.2008)). *See also In re Demonica*, 345 B.R. 895, 902 (Bankr.D.Ill.2006)("In order

to give effect to every word in the statute, the term 'actual monthly expenses' cannot be interpreted to mean the same as 'applicable monthly expenses.' ... [T]he term 'applicable monthly expenses' under the National and Local Standards means something other than a debtor's 'actual monthly expenses.' ")(quoted in *In re Kimbro*, 389 B.R. at 523–24, and *In re Armstrong*, 395 B.R. 127, 132 (E.D.Wash. 2008)).

In *In re Ralston*, 400 B.R. 854 (Bankr. M.D.Fla.2009), the Court recently agreed that the word choice contained in § 707(b)(2) is significant. In *Ralston*, the Court was interpreting § 707(b) for the purpose of determining whether a Chapter 7 case should be dismissed, instead of whether a Chapter 13 debtor was applying all of his projected disposable income to his repayment plan. In both contexts, however, the question is whether a debtor may deduct the standard ownership cost for an unencumbered vehicle under § 707(b)(2)(A)(ii)(A). With respect to § 707(b)(2), the Court in *Ralston* found:

> It is also useful to note that the word "applicable" is used in contrast to the term "actual." The phrase "applicable monthly expense amounts" (which are determined under the IRS Standards) is followed by the phrase "actual monthly expense amounts" (which are determined under the IRS Other Necessary Expenses). Therefore, it is clear that the applicable monthly expense amounts are not a debtor's "actual" expenses, but rather "applicable" expenses to be determined by reference to the "National and Local Standards."

*In re Ralston*, 400 B.R. at 865. In other words, the term "applicable" in § 707(b)(2)(A)(ii)(A) refers to the variables in the National and Local Standards that a debtor must select, such as the area in which he resides and the number of vehicles that he owns, and not to the expenses actually incurred by the debtor. *In re*

*Armstrong*, 395 B.R. at 131–32. *See also In re Bentley*, 400 B.R. at 852.

Based on the language contained in § 707(b)(2), the Court finds that the Debtors are not precluded from deducting the standard ownership cost for their unencumbered vehicle, even though the standard may not represent the amount of an "actual" expense incurred for the vehicle.

### C. Congressional intent

Third, the Chapter 13 Trustee asserts that the ownership cost for an unencumbered vehicle should not be allowed as a deduction from the Debtors' total monthly income because allowance of the deduction would violate congressional intent. (Doc. 52, pp. 12–16). Specifically, the Chapter 13 Trustee contends that a primary purpose in the enactment of BAPCPA was to increase the distribution to unsecured creditors in chapter 13 cases. According to the Trustee, this purpose is hindered if debtors are permitted to effectively decrease the disposable income available for such distribution by taking the deduction from income.

The Court recognizes the stated desire of Congress to maximize the funds that are paid to unsecured creditors in bankruptcy cases. "[I]t is clear that Congress intended 'to ensure that debtors repay creditors the maximum they can afford.'" *In re Becquer*, 2009 WL 395403, at *3 (Bankr.S.D.Fla.)(quoting H.R.Rep. No. 019–31, Pt. 1, at 2 (2005) U.S.Code Cong. & Admin.News 2005, pp. 88–89).

In utilizing the IRS National and Local Standards in § 707(b)(2), however, it is equally clear that Congress favored the concept of a uniform formula for determining a debtor's expenses. The application of the Local Standards for transportation costs, including vehicle ownership costs, has been found to promote the Congressional policy of uniform allowances for de-

termining a debtor's disposable income. *In re Pearl*, 394 B.R. 309, 313 (Bankr. N.D.N.Y.2008). "By explicitly referring to the National and Local Standards, Congress incorporated a table of standard expenses that could be easily and uniformly applied." *In re Kimbro*, 389 B.R. at 527. To allow the debtor to deduct vehicle ownership expenses for an unencumbered vehicle favors the uniform application of the standards set forth in § 707(b)(2), which were intended to be more of a bright-line rule than a true measure of the debtor's ability to pay. *In re Ralston*, 400 B.R. at 866–67.

■ Further, allowance of the deduction for unencumbered vehicles acknowledges the reality that the owners incur expenses associated with those vehicles that are independent from debt or financing payments. Car ownership expenses, for example, "necessarily and typically include items such as depreciation, licensing, taxes, and insurance." *In re Burbank*, 401 B.R. at 72(citing *Ross–Tousey*, 549 F.3d at 1160).

The court in *Kimbro* also accurately reasoned that, "expenses relating to vehicle ownership are the expenses for depreciation, insurance, licensing fees and taxes, each of which is a consequence of ownership and is incurred without regard to vehicle use. Ultimately, every vehicle owner incurs ownership expenses, and that is so regardless of debt or lease payments."

*In re Bentley*, 400 B.R. at 853(quoting *In re Kimbro*, 389 B.R. at 531). Permitting a debtor to deduct the standard ownership cost for an unencumbered vehicle therefore recognizes the reality that the vehicle costs money even without a monthly debt payment.

In sum, it is clear that a primary purpose of BAPCPA is to maximize the amount that is paid to unsecured creditors in bankruptcy cases. Co-existing with this policy, however, is Congress' desire to establish a standard for determining a debtor's expenses that can be easily and uniformly applied in all cases. In implementing these policies, the Court is guided by its objective to administer "a realistic framework by which debtors can succeed in Chapter 13." *In re Bentley*, 400 B.R. at 853. With respect to the vehicle ownership cost, such a realistic framework includes the recognition that expenses are incurred for a vehicle owned by a debtor, whether or not the vehicle is encumbered.

Upon balancing the policies underlying BAPCPA, the Court finds that congressional intent does not preclude the Debtors from deducting the standard ownership cost for their unencumbered vehicle.

### Conclusion

The issue in this case is whether the Debtors are permitted to deduct the IRS standard vehicle ownership costs from their total monthly income for purposes of calculating their "projected disposable income" under § 1325(b) of the Bankruptcy Code, even though the vehicle is not subject to any lien or security interest.

The Court finds that the deduction should be permitted. The allowance of the deduction is consistent with the language contained in § 707(b)(2) of the Bankruptcy Code, and with the legislative history and policies underlying BAPCPA. Consequently, the Chapter 13 Trustee's Objection to Confirmation of Debtors' Chapter 13 Plan should be overruled, and the Debtors' Amended Chapter 13 Plan should be confirmed.

Accordingly:

**IT IS ORDERED that:**

1. The Objection to Confirmation of Debtors' Chapter 13 Plan, filed by Douglas W. Neway as Chapter 13 Trustee, is overruled.

2, The Chapter 13 Trustee is directed to submit a proposed Order Confirming the Debtors' Amended Chapter 13 Plan within twenty (20) days of the date of this Order.